**UNITED STATES of America, Appellee,**

v.

**Daniel K. KAYE, Defendant–Appellant.**

**No. 1407, Docket 93–1712.**

United States Court of Appeals, Second Circuit.

Argued April 5, 1994.

Decided May 2, 1994.

John R. Gulash, Jr., Bridgeport, CT (Gulash & Fleischmann, Bridgeport, CT, on the brief), for defendant-appellant.

Nora R. Dannehy, Asst. U.S. Atty., Hartford, CT (Christopher F. Droney, U.S. Atty., New Haven, CT, on the brief), for appellee.

Before: NEWMAN, Chief Judge, TIMBERS and PRATT, Circuit Judges.

JON O. NEWMAN, Chief Judge:

This appeal challenging an upward departure in imposing a sentence illustrates the often overlooked possibility of a departure, either upward or downward, based on an aggravating or mitigating circumstance that is present *to a degree* not adequately considered by the Commission in formulating the Sentencing Guidelines. Daniel K. Kaye, a registered stockbroker, appeals from a judgment of the District Court for the District of Connecticut (Peter C. Dorsey, Judge) convicting him of criminal charges arising out of his defrauding his great-aunt of her life's savings. The District Court imposed a sentence of 42 months, departing upwards from the applicable sentencing range by five months. Because the *degree* of the harm inflicted by the defendant's fraud—depriving the victim of most if not all of her liquid assets, leaving her to rely on the generosity of others, quite possibly for the rest of her life—was not adequately considered by the Commission, we affirm.

## Background

In December 1987, Kaye's great-aunt, Annette Zabohonski, entrusted him with $893,-700 to invest on her behalf. Instead of investing the money for his aunt and giving her the proceeds, Kaye diverted a large portion of the money to his personal checking account. He then withdrew large sums from that account to bolster his failing grocery business. In 1988, Zabohonski became concerned about her investments because she was no longer receiving monthly account statements on them. She contacted Kaye numerous times to remind him that she expected to receive the monthly statements at her residence, but Kaye reassured her that her investments were in order. During the following year, Zabohonski's concern increased when she found that she no longer received any regular interest or dividend payments from her investments. During the next few years, she continued to seek a full accounting from Kaye, who would always assure her that all was well and that she would soon be receiving monthly account statements. Efforts on her behalf by other relatives to obtain an accounting of the funds were similarly unsuccessful. In 1992, Zabohonski retained a lawyer who, after meeting with Kaye, referred the matter to the Feder-

al Bureau of Investigation. This prosecution resulted.

Kaye eventually returned $180,995 of the money that his aunt had given him. Zabohonski had spent approximately $40,000 in an effort to recoup her losses.

According to the Government, Kaye lived extravagantly during the period his aunt's assets were being depleted. He leased expensive cars, had extensive landscaping done at his home, and added a pool and a deck to his home.

A grand jury indicted Kaye for ten counts of bank fraud and three counts of mail fraud. Though the primary victim of Kaye's fraud was his aunt, the Government charged bank fraud because Kaye fraudulently endorsed checks payable to his aunt and deposited them into both his own account at the bank and an unauthorized account in her name that he opened at the bank, and converted money from both accounts to his own use. In a separate information, Kaye was also charged with one count of tax fraud in violation of 26 U.S.C. § 7206(1). Pursuant to a written plea agreement, Kaye pled guilty to count ten of the indictment, a bank fraud count under 18 U.S.C. § 1344. The Government dismissed the remaining counts of the indictment. Under a separate plea agreement, Kaye also pled guilty to the tax fraud count in the information.

The Court sentenced Kaye under the 1992 version of the Sentencing Guidelines. *See* 18 U.S.C. § 3553(a)(4) (1988). The Court computed his offense level for the bank fraud count as follows. It began with a base offense level of six for fraud. U.S.S.G. § 2F1.1 (1992). It added ten levels for the amount of the loss due to fraud. *Id.* § 2F1.1(b)(1)(K). The Court also added two levels for more than minimal planning (*id.* § 2F1.1(b)(2)), two levels for abuse of position of trust or use of special skill (*id.* § 3B1.3), and another two levels for vulnerable victim (*id.* § 3A1.1). It then decreased the offense level by three for acceptance of responsibility (*id.* § 3E1.1), resulting in a final adjusted offense level of 19.

With an offense level of 19 and a criminal history category of I, the guideline range was 30 to 37 months. The Court was dissatisfied with this range, believing that the impact of the crime on Annette Zabohonski might require an upward departure. After giving notice that a departure would be considered, *see United States v. Contractor*, 926 F.2d 128, 131–32 (2d Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 123, 116 L.Ed.2d 91 (1991), and conducting a hearing, the Court departed upward two levels, resulting in a guideline range of 37 to 46 months. The Court sentenced Kaye to 42 months in prison on the bank fraud count, five months more than the maximum available if it had not departed. The Court also imposed a sentence of 36 months imprisonment for the tax fraud count, to run concurrently with his sentence for bank fraud. In making the departure, the Court expressed concern that because of Kaye's fraud, Zabohonski, who is in her eighties, was more significantly harmed than other fraud victims, even other vulnerable fraud victims, because she had lost most of her liquid assets, and was forced to depend on the generosity of others to meet her usual living expenses, quite possibly for the rest of her life.

### Discussion

In the Sentencing Reform Act of 1984, Congress authorized a sentencing court to depart from the range imposed by the Sentencing Guidelines where "the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b) (1988). In this case, we must decide if the factor relied on by the District Court to depart upward was a factor not adequately considered by the Commission. "A district court's ruling that a given factor was not adequately considered by the Commission is subject to *de novo* review." *United States v. Farah*, 991 F.2d 1065, 1069 (2d Cir.1993) (citations omitted). The First Circuit has recently reconsidered the application of the *de novo* review standard to sentencing court determinations whether a factor has been adequately considered by the Commission. *See United States v. Rivera,*

994 F.2d 942, 950–52 (1st Cir.1993). That Court has adopted a standard of review requiring greater deference in certain cases to the sentencing court's determination as to whether a particular case falls outside the Guidelines' "heartland." *See* U.S.S.G. Ch. I, Pt. A, intro. comment. 4(b). Because even our strict *de novo* review supports the District Court's departure, the instant case does not require us to reconsider the standard by which we review this aspect of the departure decision.

The District Court departed upward because Kaye's fraud had totally depleted his aunt's liquid assets and left her financially dependent on the goodwill of others. Kaye contends that the District Court should not have departed upward because the Sentencing Commission adequately considered this factor in formulating the Guidelines. Indeed, Kaye argues that the offense level had already been enhanced under the Guidelines to take into account the harm that his aunt had suffered. Kaye points to adjustments to the base offense level for (1) the extent of the monetary loss (a ten-level enhancement); (2) the abuse of a position of trust or use of a special skill (a two-level enhancement); and (3) the targeting of a vulnerable victim (a two-level enhancement). Kaye concludes that, by enhancing the offense level for these factors and then departing upward to account for the particular impact on Zabohonski, the Court double-counted the harm to the victim. *See Williams v. United States,* —— U.S. ——, ——, 112 S.Ct. 1112, 1119, 117 L.Ed.2d 341 (1992) ("[I]t is an incorrect application of the Guidelines for a district court to depart from the applicable sentencing range based on a factor that the Commission has already fully considered in establishing the guideline range...").

1. *Extent of Financial Loss.* Kaye argues that the harm to his aunt was already accounted for in the base offense level for fraud as adjusted for the extent of loss. The fraud guideline imposes a base offense level of 6, adding 10 levels for losses exceeding $500,000 but not exceeding $800,000. *See*

U.S.S.G. § 2F1.1 (1992). Under Kaye's understanding of this guideline, "part and parcel of the provision is the Sentencing Commission's determination that the greater the economic loss, the greater [the] likelihood that the victim will sustain dire economic consequences." Brief for Appellant at 10. In *United States v. Mandel,* 991 F.2d 55 (2d Cir.1993), we observed that the offense level set forth under the fraud guideline is predicated at least in part on the belief that larger losses precipitate greater harms. We said that "the base offense level for fraud and the vulnerable victim adjustment had already taken into account the harm to the victims." *Id.* at 59. We accordingly rejected an upward departure for psychological harm due to fraud because the trial court had failed to state why the harm went beyond that already accounted for in the Guidelines range.

Our holding in *Mandel* should not be misread to mean that the guideline for fraud adequately considers all types and degrees of harm to victims. Even in *Mandel,* we remanded to the sentencing court to determine whether an upward departure might be appropriate to account for the psychological harm inflicted on the victims of the defendant's fraud, so long as the sentencing judge explained how the Guidelines failed to account for such harm. An application note to the fraud guideline makes this explicit, declaring that there may be cases where the financial loss "does not fully capture the harmfulness and seriousness of the conduct," such that an upward departure may be necessary. U.S.S.G. § 2F1.1, comment. (n. 10) (1992). We believe that the instant case presents that type of case. While Kaye may be correct that the fraud guideline adequately considers the *kind* of harm suffered by Annette Zabohonski—namely, the loss of substantial assets by an individual—we do not think that the fraud guideline adequately considers the *degree* of harm she suffered—so great an impact from a loss as to leave her financially dependent on the generosity of others, quite possibly for the rest of her life.[1]

1. It may be that in many cases the question of whether a factor exists to a *degree* not considered in the Guidelines can be reformulated as a question of whether the factor is of a *kind* not considered in the Guidelines. The "degree" question may be recast as a "kind" question simply by considering an aggravating or mitigating circumstance as a "factor" within the meaning of 18

*Cf. United States v. Miller*, 993 F.2d 16, 21 (2d Cir.1993) (affirming upward departure where psychological injury to the victim was " 'much more serious than that normally resulting from commission of the offense' " (quoting U.S.S.G. § 5K2.3)).

2. *Abuse of Position of Trust or Use of Special Skill.* Kaye contends that the enhancement for abuse of position of trust or use of special skill took into account some, if not all, of the harm suffered by his aunt. Under this Guideline, "[i]f the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense," a sentencing court should increase the defendant's offense level by two. U.S.S.G. § 3B1.3 (1992). According to Kaye, "[a]busing a position of trust better enables the wrongdoer to not only commit the offense but to continue the wrongdoing for a greater period of time." Brief for Appellant at 12. Whatever the truth of that assertion, we do not believe that this enhancement accommodates the concern Judge Dorsey expressed in departing upward. This enhancement is concerned primarily with certain factors that make a crime more easy to commit, not with the consequences of the crime upon individuals. Even if a crime involving an abuse of a position of trust or a use of a special skill is more likely to result in greater harm to the victim of the crime, a proposition that is not self-evident, that enhancement does not fully capture the type and degree of harm inflicted here.

. 3. *Vulnerable Victim.* The enhancement for crimes committed against unusually vulnerable victims evinces the Commission's concern with the condition of the victim more directly. But like the adjustment for abuse of position of trust or use of special skill, it is not primarily concerned with the defendant's selection of victims who will suffer greatly from the crime. The vulnerable victim enhancement provides as follows:

> If the defendant knew or should have known that a victim of the offense was unusually vulnerable due to age, physical or mental condition, or that a victim was otherwise particularly susceptible to the criminal conduct, increase by 2 levels.

U.S.S.G. § 3A1.1 (1992). The courts appear to have interpreted "susceptible to the criminal conduct" as emphasizing that a particular victim was less likely to thwart the crime, rather than more likely to suffer harm if the crime is successful. *See, e.g., United States v. Hershkowitz*, 968 F.2d 1503, 1506 (2d Cir. 1992) (holding that prisoner who was surrounded by prison officers and then assaulted by one officer was vulnerable victim because he was "not in a position to resist"); *United States v. Caterino*, 957 F.2d 681, 683–84 (9th Cir.1992) (affirming vulnerable victim enhancement because defendants knew or should have known of vulnerability of elderly victims to phone fraud scheme); *United States v. Altman*, 901 F.2d 1161, 1165 (2d Cir.1990) (affirming vulnerable victim enhancement where defendant drugged his victims, making them "physically and mentally more vulnerable" to sexual exploitation). Thus, the vulnerable victim enhancement does not fully capture Judge Dorsey's concern with the actual impact of the fraud on the victim. To the extent that our opinion in *Mandel* recognizes that the vulnerable victim enhancement does in part consider the harm to the victim, we believe that the harm present in the instant case is of a degree not adequately accounted for by the vulnerable victim guideline.

We conclude that an upward departure was warranted because (1) in formulating the fraud guideline, the Commission did not fully consider the degree of harm inflicted upon Annette Zabohonski; and (2) in formulating the vulnerable victim enhancement and the abuse of position of trust or use of special skill enhancement, the Commission did not fully consider the kind or degree of harm inflicted upon her.

U.S.C. § 3553(b), rather than as a variation in the degree to which some more encompassing factor is present. In this respect, the distinction between "kind" and "degree" is similar to the inquiry arising in qualified immunity cases, where a court inquiring whether a legal rule has been sufficiently established must determine the appropriate "level of generality at which the relevant 'legal rule' is to be identified." *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987).

We also believe that the extent of the departure was reasonable "in light of the grounds for departing." *Williams,* —— U.S. at ——, 112 S.Ct. at 1121; *see also* 18 U.S.C. § 3742(f)(2) (1988). The Court analogized to the vulnerable victim enhancement in departing upward two offense levels and selected a sentence only five months above the maximum of the otherwise applicable range.

The judgment of the District Court is affirmed.