UNITED STATES, Appellee,

v.

Mae Linh PELKEY, Defendant, Appellant.

No. 93–2236.

United States Court of Appeals, First Circuit.

Argued May 5, 1994.

Decided July 14, 1994.

Marc Chretien, by Appointment of the Court, with whom Chretien & Schmitt, Manchester, NH, was on brief for appellant.

Jean B. Weld, Asst. U.S. Atty., with whom Paul M. Gagnon, U.S. Atty., Concord, NH, was on brief for appellee.

Before TORRUELLA and STAHL, Circuit Judges, and CARTER,* District Judge.

GENE CARTER, Chief District Judge.

In this appeal, Defendant Mae Linh Pelkey challenges the district court's upward departure from the Sentencing Guidelines. After considering Defendant's argument, we vacate the sentence and remand for resentencing.

## I. FACTS

On July 17, 1993, Appellant Mae Linh Pelkey pled guilty in United States District Court in Concord, New Hampshire, to a criminal information charging three counts of mail fraud, 18 U.S.C. § 1341, and one count of wire fraud, 18 U.S.C. § 1343. Pelkey defrauded a number of her friends, business associates, and former customers out of more than $500,000. The fraudulent transactions involved real estate, investments, and the sale of a Jaguar automobile.

* Of the District of Maine, sitting by designation.

The Presentence Report recommended an adjusted total offense level for Pelkey of 16.[1] The trial court adopted most of the findings and recommendations of the Presentence Report,[2] with the resulting sentencing range of 24 to 30 months. U.S.S.G. Ch. 5, Pt. A (sentencing table). In addition, the Presentence Report noted that the psychological injury of the victims may be grounds for upward adjustment under U.S.S.G. § 5K2.3. The Government, in turn, requested an upward departure based on the "extreme psychological injury" suffered by Pelkey's victims.

The sentencing transcript reveals the district court's struggle over whether and how much to depart from the Guidelines in this case. In an effort to quantify the "real value" of the loss suffered by the victims, the court relied on the table set forth at section 2F1.1 of the Guidelines. Finding the real value of the loss to these victims closer to $10,000,000 than to $500,000, the approximate monetary loss used to determine the base offense level, the court concluded that an upward departure of five levels, from level 17 to level 22, was warranted. The court then imposed a sentence of 43 months of imprisonment, to be served concurrently with the unexpired term of Pelkey's state sentence on related fraud charges, and restitution.

## II. DISCUSSION

Pelkey contends that the trial court's application of a five-level upward adjustment in the base offense level was excessive and unreasonable. Specifically, Pelkey argues that it was error for the court to assess the real value of the harm experienced by the victims at a factor twenty times greater than their actual monetary losses. Although Pelkey admits that consideration of the victims' psychological injury is permissible under U.S.S.G. § 5K2.3, she argues that the alleged injury to the victims in this case is not serious enough to support the application of that section. The Government responds that the court principally found support for the departure in the fact that the guideline sentence did not fully account for the harm done to the victims because of their loss of retirement funds and some of the victims' inability to recapture the loss because of their ages. In the alternative, the Government argues that the court found sufficient facts to support a departure pursuant to section 5K2.3 for extreme psychological injury.

 The district court offered two reasons that section 2F1.1's loss table did not fully capture the harmfulness and seriousness of the conduct: 1) for some of the victims, the losses represented "all or partially all of their life savings.... and the ability of these victims to recover from the losses they suffered is quite limited"; and 2) several victims have suffered "extreme psychological injury as a result of the defendant's conduct."[3] Supplemental Findings of Fact and

1. The recommended total adjusted offense level of 16 included: a base offense level of six for fraud, U.S.S.G. § 2F1.1; plus nine levels for the loss involved in the offense of conviction and relevant conduct, totalling between $350,000 and $500,000, U.S.S.G. § 2F1.1(b)(1); plus a two-level enhancement for more than one victim, U.S.S.G. § 2F1.1(b)(2)(B); plus a two-level enhancement for vulnerable victim, U.S.S.G. § 3A1.1; less three levels for acceptance of responsibility, U.S.S.G. § 3E1.1(a) and (b).

2. The court disagreed with the report in two respects. First, the court found the total amount of loss was $576,290.40 rather than $364,264.47. The effect of this determination on the adjustment for the specific offense characteristics was that the adjustment would be plus ten rather than plus nine, thus raising Pelkey to a total adjusted offense level of 17. Next, the court found that the sentences described in the crimi-

nal history section of the Presentence Report, giving rise to the state court convictions, were sentences for conduct that was "part of the instant offense." As a result, the court found that Pelkey should receive no criminal history points, changing her criminal history category from II to I. The Court notes, however, that the recalculation of Pelkey's offense characteristics and criminal history category did not change the sentencing range from that recommended in the Presentence Report.

3. The district court explained its reasons for departure both from the bench and in written Supplemental Findings of Fact and Conclusions of Law. We quote these findings and conclusions at length in order to show a complete understanding of the basis for the district court's decision.

I have departed upwards in sentencing the defendant from a level 17 to a level 22 because

Conclusions of Law at 4 and 5. This Court reviews sentencing departures by examining: (1) whether the reasons the court gave for departing are of the sort that might permit a departure in an appropriate case; (2) whether the record supports the finding of facts demonstrating the existence of such reasons; and (3) whether, given the reasons, the degree of departure is reasonable. *United States v. Rivera*, 994 F.2d 942, 950 (1st Cir. 1993); *United States v. Diaz–Villafane*, 874 F.2d 43, 49 (1st Cir.), *cert. denied*, 493 U.S. 862, 110 S.Ct. 177, 107 L.Ed.2d 133 (1989). In *Rivera*, we refined the standard of review for departures under the first prong, finding plenary review appropriate to determine whether the allegedly special circumstances underlying the departure "are of a 'kind' that the Sentencing Guidelines, *in principle*, permit the sentencing court to consider." *Rivera*, 994 F.2d at 951. Plenary review is also applied to interpretations of Guideline language. *Id.* However, we review the district court's determination that a case is unusual, and therefore worthy of departure, "with full awareness of, and respect for, the trier's superior 'feel' for the case." *Id.* at 952 (quoting *Diaz–Villafane*, 874 F.2d at 50). Similarly deferential is our review of the second and third prongs, that is, the sentencing court's

findings of fact and the direction and degree of departure, respectively. *Id.*, 994 F.2d at 950.

■ The sentencing judge is not required to ignore the consequences of a fraud scheme outside the immediate monetary loss. If the evidence shows that the defendant's offense was more serious than contemplated by the applicable guidelines, the judge can depart upward. *See* 18 U.S.C. § 3553(b) (general principle); U.S.S.G. § 2F1.1, comment (n. 10). Application Note 10 provides a nonexclusive list of circumstances where the loss determined in section 2F1.1(b)(1) does not fully capture the harmfulness of the conduct and, thus, departure may be warranted. In this case, we begin by noting that the amount of money and the number of victims had already been factored into the calculation of Pelkey's base offense level under the Guidelines. U.S.S.G. § 2F1.1(b)(1) and (b)(2)(B). In addition, the special vulnerability resulting from the age of the victims and their relationship with the Defendant had also been taken into account. U.S.S.G. § 3A1.1. Accordingly, if we are to avoid double-counting in this case, the departure can be valid only if it was properly based on

I have determined that aggravating circumstances exist in this case of a kind and degree not taken into account by the Sentencing Commission. As a result of this upward departure, I have sentenced the defendant to 43 months. I have departed upwards for the following reasons:

(a) Application Note 10 to Section 2F1.1 of the Sentencing Guidelines provides that "[i]n cases in which the loss determined under subsection (b)(1) does not fully capture the harmfulness and seriousness of the conduct, an upward departure may be warranted." I have relied upon this note in making an upward departure.

(b) The primary reason why the loss in this case does not represent the seriousness and harmfulness of the defendant's conduct is that the losses suffered by several of the victims represented all or partially all of their life savings. Further, in several cases, the victims were elderly or nearing retirement and the ability of these victims to recover from the losses they suffered is quite limited. Thus, the losses here will require several of the victims to live out their lives under severe financial constraints that they would not otherwise have had to suffer if the defendant had not engaged in her criminal conduct. Given the defen-

dant's close friendship with several of these elderly victims, it is reasonable to conclude that she was or should have been aware that her course of conduct would deprive these victims of all or most of their retirement savings. This is a factor which the Guidelines could not possibly have considered in measuring the offense level that should be assigned to the defendant's conduct.

(c) A secondary reason for the departure is that there is evidence reflected in the Presentence Report that several victims have suffered extreme psychological injury as a result of defendant's conduct. Moreover, given the defendant's exploitation of her close friendship with several of the victims, it is reasonable to assume that she was or should have been aware of the risk of extreme psychological injury that could result from her conduct. While it could be debated whether the psychological injuries suffered by the victims in this case are so severe as to qualify for departure under § 5K2.3 of the Guidelines, I find that the psychological injuries suffered here, in combination with the other reasons I have expressed, are serious enough to warrant an upward departure.

Supplemental Findings of Fact and Conclusions of Law at 4–5.

the victims' resulting financial strain or psychological harm. We will deal with each issue in turn.

### A. Financial Strain of Victims

The principal reason given by the district court for departure was the victims' limited ability to recover from the loss of accumulated savings and the resulting financial stress associated with the loss of life savings. This presents for our determination the issue of whether these facts are unusual and, therefore, worthy of departure. Accordingly, we will "accept the findings of fact of the district court unless they are clearly erroneous" and will "give due deference to the district court's application of the guidelines to the facts." 18 U.S.C. § 3742(e).

Robert and Kim Atma's financial loss represented their accumulated life savings of more than 20 years. Already retired, Katherine Meuse and Julie Laskey, now without their retirement savings, are forced to live on social security and to borrow from friends and relatives. In addition, Ms. Meuse has been forced to forego physical examinations and medication for her heart problem. Pelkey's scheme left Robert LeClair "financially depleted." Mr. LeClair was forced to go back to work full time at age 60, his automobile has been repossessed, and he was forced to take out a home equity loan.

■ The nonexclusive list of grounds for departure under Application Note 10 of section 2F1.1 does not include the reasons given by the district court for departure. The failure to have a secure financial future does not, without more, rise to the level of seriousness contemplated by the other grounds for departure suggested in the application note.[4] The bases for departure provided in Applica-

tion Note 10 all suggest unusual repercussions beyond the loss of financial capacity and the general sense of betrayal normally associated with fraud involving false pretenses.

■ We acknowledge that there is a distinction between defrauding a 40–year–old of her life savings and defrauding a 60–year–old of her savings; that is, the 40–year–old is capable of recouping at least some of the loss, while the 60–year–old may have little or no opportunity to recover from the financial loss. This distinction is, at least partially, reflected in the enhancement for vulnerable victims and, in any case, does not warrant a five-level departure. Therefore, the upward departure in this case must be vacated. On remand, if the court were to make specific findings that some of the victims were unable to provide for their welfare or that the facts present a situation equal to the serious caliber of the other basis suggested for departure in Application Note 10, departure may be appropriate.[5]

### B. Psychological Injury to Victims

The district court also gave as a secondary reason for departure the victims' psychological injuries. "[P]hysical or psychological harm" to the victim is specifically mentioned under Application Note 10(c) as a possible basis for departure. An upward departure grounded on psychological injury is appropriate only when the injury is "much more serious than that normally resulting from commission of the offense," U.S.S.G. § 5K2.3, and only when there is a "substantial impairment of the intellectual, psychological, emotional, or behavioral functioning of a victim, when the impairment is likely to be of an extended or continuous duration, and when

---

**4.** Examples of fraud of a more serious caliber given in the Application Note are:

 (a) the primary objective of the fraud was non-monetary;

 (b) false statements were made for the purpose of facilitating some other crime;

 (c) the offense caused physical or psychological harm;

 (d) the offense endangered national security or military readiness;

 (e) the offense caused a loss of confidence in an important institution.

U.S.S.G. § 2F1.1, comment (n. 10).

**5.** The Court notes that Application Note 10 has since been amended to provide that departure may be appropriate if "the offense involved the knowing endangerment of the solvency of one or more victims." U.S.S.G. § 2F1.1, comment (n. 10(f)) (1993). This seems to address the type of harm the court was attempting to quantify. A departure based on these grounds requires a court to find that a defendant *knowingly* pushed a victim into extreme financial hardship.

the impairment manifests itself by physical or psychological symptoms or by changes in behavior patterns." *Id.; United States v. Astorri,* 923 F.2d 1052, 1059 (3d Cir.1991) (court upheld two-level departure for psychological harm where evidence showed that a victim suffered from high blood pressure and was under a doctor's care as a result of defendant's actions).

■■■ The evidence, in this case, of psychological injury to the victims was, at best, meager. All of the victims expressed the feeling that they had lost trust in their ability to judge others. In addition, the record reveals that the Atmas, who considered themselves "best friends" of Pelkey for over 22 years, suffered a sense of severe shock after learning of the fraudulent real estate scheme.[6] Ms. Meuse and Ms. Laskey, friends and former clients of Pelkey, told the probation officer that they experienced pain, frustration, and depression over the knowledge that they will not live their senior years without fear of financial burden. Sean Tracey told the Probation Officer that he suffered lingering feelings of distrust for others as a result of the offense. The victim experiencing the most severe psychic harm appears to be Mr. LeClair, Pelkey's former business associate. Mr. LeClair disclosed to the probation officer that he was in an "emotionally drained state," experiencing moments of extreme despair and thoughts of suicide. No medical or psychological records were offered and there is no evidence that treatment was received by any of the victims.

This evidence is altogether insufficient to permit departure for psychological injury. We do not think that feelings of lack of trust, frustration, shock, and depression suffered by Pelkey's victims are so far beyond the heartland of fraud offenses as to constitute psychological harm within the meaning of the Policy Statement in § 5K2.3 or Application Note 10(c) to § 2F1.1; *United States v. Lara,* 975 F.2d 1120, 1128 (5th Cir.1992) (finding inadequate proof of harm). Some degree of consequential trust and reliance by

the victim is to be expected in the majority of fraud cases involving false pretenses, and the presence of such reliance will not generally justify departure. In sum, the *injuries* these people suffered were no worse than that of many fraud victims.

The sentence is vacated and the case is remanded for resentencing consistent with this opinion.

---

6. Robert Atma's victim impact statement also references "mental anguish and heartache" resulting from the unexplained geographical separation from his wife. Assuming that the separa-

tion is attributable to Pelkey's conduct, these feelings are not serious enough to establish a psychic injury.