57 F.3d 1061
NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
 UNITED STATES, Appellee,
v.
Mae Linh PELKEY, II, Defendant, Appellant.
 No. 95-1008.
 United States Court of Appeals,
First Circuit.
 June 19, 1995.
 
 Marc Chretien on brief for appellant.
 Paul M. Gagnon, United States Attorney, and Jean B. Weld, Assistant United States Attorney, on brief for appellee.
 D.N.H.
 AFFIRMED.
 Before CYR, BOUDIN and LYNCH, Circuit Judges.
 PER CURIAM.
 
 
 1
 Following an earlier appeal in which this court remanded for resentencing, see United States v. Pelkey, 29 F.3d 11 (1st Cir. 1994), the district court sentenced defendant Mae Linh Pelkey to a 37-month term of imprisonment. Defendant again appeals, complaining (as she did earlier) of an upward departure undertaken by the court. This time around, we find no error and thus summarily affirm. See Loc. R. 27.1.
 
 
 2
 Defendant, a real estate broker and financial adviser who "defrauded a number of her friends, business associates, and former customers out of more than $500,000," Pelkey, 29 F.3d at 12, pled guilty in 1993 to three counts of mail fraud and one count of wire fraud. See 18 U.S.C. Secs. 1341, 1343. At the original sentencing on October 18, 1993, the court imposed a prison term of 43 months. It first calculated a total offense level of 17,[1] which (with a criminal history category of I) yielded a sentencing range of 24 to 30 months. The court then determined that an upward departure was warranted because the ten-level increase mandated by the applicable provision of the fraud loss table did not "fully capture the harmfulness" of defendant's conduct. U.S.S.G. Sec. 2F1.1, comment. (n.10) (1992).[2]
 
 
 3
 In support of this conclusion, the court cited two factors (with primary emphasis placed on the former): (1) as defendant was or should have been aware, several of the victims were elderly individuals who lost most or all of their life savings, with little prospect of regaining financial security; and (2) several victims had suffered "extreme psychological injury." Suggesting that the real value of the losses to the victims was closer to $10 million than to $500,000, the court departed upward by five levels to a total offense level of 22. The resulting 43-month sentence was near the bottom of the revised sentencing range.
 
 
 4
 On appeal, we agreed with defendant that the cited justifications for the five-level departure were inadequate. With respect to the court's first rationale, we noted that "[t]he failure to have a secure financial future does not, without more, rise to the level of seriousness" contemplated by the grounds for departure listed as examples in application note 10.[3] Pelkey, 29 F.3d at 15. At the same time, we acknowledged that there was a distinction "between defrauding a 40-year-old of her life savings and defrauding a 60-year-old of her savings." Id. That distinction, we observed, was at least partially reflected in the enhancement for vulnerable victim and would not, in any case, "warrant a five-level departure." Id. Yet we specifically left open the possibility that an upward departure might be appropriate if, on remand, "the court were to make specific findings that some of the victims were unable to provide for their welfare or that the facts present[ed] a situation equal to the serious caliber" of the examples listed in application note 10. Id. We also referred to the intervening amendment to note 10 which had added to that list of examples by encouraging a departure where "the offense involved the knowing endangerment of the solvency of one or more victims." Id. at 15 n.5 (quoting U.S.S.G. Sec. 2F1.1, comment. (n.10(f)) (1993)). We observed that a departure on this ground-one which required a finding that a defendant knowingly pushed a victim into extreme financial hardship-"seem[ed] to address the type of harm the court was attempting to quantify." Id.
 
 
 5
 On remand, after receiving supplemental evidence from the parties, the court found that defendant had knowingly endangered the solvency of several of her victims. It therefore again departed upward, this time by two levels, to reach a total offense level of 19. The resulting 37-month sentence was within the revised sentencing range. As she did below, defendant now argues that (1) reliance on the 1993 amendment to application note 10 violated the ex post facto clause; (2) consideration of the government's supplemental affidavits was improper, and the evidence was otherwise insufficient to support the upward departure; and (3) departing upward due to the financial strain on the victims, in conjunction with the adjustment for vulnerable victims, resulted in impermissible double-counting. Each of these contentions, we conclude, misses the mark.
 
 Ex Post Facto Concerns
 
 6
 "To avoid ex post facto difficulties, courts should 'normally apply [guideline] amendments retroactively only if they clarify a guideline, but not if they substantively change a guideline.' " United States v. Rostoff, ___ F.3d ___, No. 93- 1376, slip op. at 12 (1st Cir. 1995) (quoting United States v. Prezioso, 989 F.2d 52, 53 (1st Cir. 1993)). Defendant argues that the 1993 amendment to application note 10 effected such a substantive change. This conclusion, she suggests, is apparent from the language employed by the Commission, which described this aspect of the amendment as one that "revises the Commentary to Sec. 2F1.1 by expanding Application Note 10 to provide guidance in cases in which the monetary loss does not adequately reflect the seriousness of the offense." U.S.S.G., App. C., Amend. 482 (1993) (emphasis added). The fact that other changes implemented by Amendment 482 were characterized as "clarifying," she adds, only reinforces this interpretation.
 
 
 7
 We disagree. The distinction between a clarification and a substantive revision of the guidelines is not always "clear- cut," Isabel v. United States, 980 F.2d 60, 62 (1st Cir. 1992), and the Commission's language can be read to support either view.[4] Of greater relevance, we think, is the fact that the examples listed in application note 10 were (and are) meant to be "nonexclusive." Pelkey, 29 F.3d at 14. As we indicated in our earlier decision, an upward departure based on unusual financial strain incurred by a victim was permissible even before the 1993 amendment. See id. at 15. Indeed, other courts have upheld departures on this ground based on the pre- 1993 version of application note 10. See, e.g., United States v. Kaye, 23 F.3d 50, 53-54 (2d Cir. 1994) (affirming upward departure based on finding that defendant's fraud-depriving his great-aunt of her life savings-involved a degree of harm not adequately considered by Commission); United States v. Stouffer, 986 F.2d 916, 927-28 (5th Cir.) (affirming departure based on finding that fraud scheme caused thousands of investors to lose their life savings), cert. denied, 114 S. Ct. 115 (1993). To a large extent, therefore, the 1993 amendment simply codified pre-existing practice. Under these circumstances, retroactive application of the amendment raises no ex post facto concerns.[5] See, e.g., United States v. Fadayini, 28 F.3d 1236, 1242 (D.C. Cir. 1994) (applying application note 10(f) on retroactive basis, without mentioning ex post facto issue); United States v. Strouse, ___ F. Supp. ___, 1995 WL 235568, at * 5 (M.D. Pa. 1995) (same).
 
 Evidentiary Issues
 
 8
 In the earlier appeal, we vacated the sentence and remanded "for resentencing consistent with this opinion." Pelkey, 29 F.3d at 16. On remand, over defendant's objection, the district court permitted the government to supplement the record with additional affidavits from three of the victims.[6] Defendant now insists that the district court exceeded the scope of our mandate by permitting the evidentiary record to be reopened. Yet our earlier opinion specifically contemplated that the court might make new findings of fact to support the upward departure. See id. at 15. It was well within the court's discretion to permit both sides to supplement the record in connection with this issue prior to its doing so.[7] See, e.g., United States v. Bell, 5 F.3d 64, 66-67 (4th Cir. 1993). The court on remand did not engage in a fully de novo hearing in which previously forfeited issues were resuscitated, see generally United States v. Bell, 988 F.2d 247 (1st Cir. 1993);[8] indeed, it declined to entertain a proposed new sentencing enhancement (for abuse of position of trust) not earlier advanced by the government. And defendant's reliance on United States v. Parker, 30 F.3d 542, 553-54 (4th Cir.), cert. denied, 115 S. Ct. 605 (1994), is misplaced, inasmuch as the government here was not afforded a second opportunity to prove an element of the offense. We thus see no error.[9]
 
 
 9
 Defendant's secondary contention in this regard-that the evidence was insufficient to support a finding that she knowingly endangered the solvency of one or more of her victims-is advanced only in peremptory fashion and can be summarily rejected. It suffices to note the following: (1) the Meuse/Laskey affidavit stated that defendant "handled all of our financial matters" and "knew what we had right down to the last penny and she took that also"; and (2) the presentence report indicated that LeClair had provided defendant with a copy of his assets and liabilities; he elaborated in his affidavit that defendant "always knew about my financial situation and knew that if she didn't give me back the money, I would become insolvent." Based on this and substantial other evidence, the district court's finding that "the departure- justifying circumstance actually existed" cannot be deemed clearly erroneous. United States v. Rostoff, ___ F.3d at ___, slip op. at 13.
 
 Double-Counting
 
 10
 Finally, we reject defendant's contention that undertaking an upward departure for financial impact on the victims, while simultaneously imposing a two-level enhancement for vulnerable victims, constituted impermissible double-counting. We implicitly rejected this argument in our earlier decision, see Pelkey, 29 F.3d at 14-15, as did the Commission in its 1993 amendment to application note 10. While the two matters do overlap, there remains a core distinction: the vulnerable victim adjustment focuses on an individual's susceptibility to becoming a victim of crime per se, whereas the note 10(f) departure focuses on the extent to which a victim has suffered an unusual degree of harm from a crime. See, e.g., United States v. Kaye, 23 F.3d at 54. As such, "the vulnerable victim enhancement does not fully capture [the] concern with the actual impact of the fraud on the victim." Id. We thus agree with the district court that no double-counting occurred.
 
 
 11
 Affirmed.
 
 
 
 [1]
 The total offense level was comprised of the following elements: a base offense level of six for fraud, U.S.S.G. Sec. 2F1.1(a) (1992); plus ten levels for losses exceeding $500,000, id. Sec. 2F1.1(b)(1); plus a two-level enhancement for more than one victim, id. Sec. 2F1.1(b)(2)(B); plus a two-level enhancement for vulnerable victim, id. Sec. 3A1.1; less three levels for acceptance of responsibility, id. Sec. 3E1.1
 
 
 [2]
 The 1992 version of application note 10 read in pertinent part as follows:
 In cases in which the loss determined under subsection (b)(1) does not fully capture the harmfulness and seriousness of the conduct, an upward departure may be warranted. Examples may include the following:
 (a) the primary objective of the fraud was non- monetary;
 (b) false statements were made for the purpose of facilitating some other crime;
 (c) the offense caused physical or psychological harm;
 (d) the offense endangered national security or military readiness;
 (e) the offense caused a loss of confidence in an important institution.
 U.S.S.G. Sec. 2F1.1, comment. (n.10) (1992). Effective as of November 1, 1993, an amendment to note 10 added the following new subdivision:
 (f) the offense involved the knowing endangerment of the solvency of one or more victims.
 See U.S.S.G., App. C., Amend. 482 (1993).
 
 
 [3]
 As to the court's secondary rationale, we held that the severity of the psychological injury suffered by defendant's victims was not "so far beyond" that experienced in "the heartland of fraud cases" as to justify a departure on such basis. Pelkey, 29 F.3d at 16
 
 
 [4]
 At one point, the district court appeared to suggest that the amendment could be deemed clarifying simply because it involved an application note rather than a guideline proper. Any such suggestion was incidental to the court's reasoning, and we have no occasion to address it here-other than to observe that, after the Supreme Court's ruling that guideline commentary is generally binding, see Stinson v. United States, 113 S. Ct. 1913, 1919 (1993), other courts have held that "subsequent amendments to the commentary ... may, just like the guidelines themselves, present ex post facto problems when applied retrospectively." United States v. Bertoli, 40 F.3d 1384, 1405 (3d Cir. 1994) (listing cases)
 
 
 [5]
 As the district court suggested in the alternative, this also means that the upward departure could have been undertaken without reliance on the intervening amendment
 
 
 [6]
 These victims, among others, had earlier provided victim impact statements to the Probation Office, which were recounted at length in the presentence report
 
 
 [7]
 The defendant declined to present any new evidence regarding the financial solvency issue, but did take the opportunity to buttress earlier evidence of rehabilitation
 
 
 [8]
 Whether a de novo hearing would have been proper in this situation, of course, is a question not before us. See, e.g., United States v. Ortiz, 25 F.3d 934, 935 (10th Cir. 1994)
 
 
 [9]
 Any error in this regard would be harmless in any event. As the district court observed, the finding that defendant knowingly endangered the solvency of one or more victims was reasonably inferable from the evidence contained in the presentence report. Indeed, defendant acknowledged below that the new affidavits "paraphrase[d]" the victims' earlier statements "almost completely."