16-3820-cr
*United States v. Cabot*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 15th day of November, two thousand eighteen.

Present:
> JOHN M. WALKER,
> GUIDO CALABRESI,
> DEBRA ANN LIVINGSTON,
> *Circuit Judges*.

---

UNITED STATES OF AMERICA,

> *Appellee*,

> v.                                                                 16-3820-cr

CARLTON P. CABOT,

> *Defendant-Appellant*,

TIMOTHY J. KROLL,

> *Defendant.*

---

| | |
|---|---|
| For Defendant-Appellant: | STEVEN Y. YUROWITZ, ESQ., New York, NY. |
| For Appellee: | GEOFFREY S. BERMAN, United States Attorney for the Southern District of New York, (Edward A. Imperatore, Sarah K. Eddy, Assistant United States Attorneys, *on the brief*), New York, NY. |

Appeal from a judgment of the United States District Court for the Southern District of New York (Furman, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-Appellant Carlton P. Cabot ("Cabot") appeals from a judgment of the United States District Court for the Southern District of New York, entered on October 31, 2016 following a guilty plea, sentencing him to a 120-month term of imprisonment and $17 million in restitution on one count of securities fraud, in violation of 15 U.S.C. § 78j(b). *United States v. Kroll*, Docket No. 15-680 (S.D.N.Y. Oct. 30, 2016) at ECF No. 73 (Judgment). We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

Cabot was the founder, President, and Chief Executive Officer of Cabot Investment Properties ("CIP"). From 2003 through 2012, CIP sponsored and oversaw eighteen tenants-in-common securities offerings ("TIC").[1] For each TIC investment, CIP formed a wholly-owned subsidiary that was responsible for managing the property. The subsidiary leased the property from the investors pursuant to a "Master Lease Agreement." According to the Master Lease Agreement, if any money remained after the subsidiary had paid the mortgage, operating expenses, and base rent, CIP was entitled to collect and keep the excess profit.

As a result of the 2008 financial crisis, a number of TICs started underperforming and were having trouble covering their operating expenses. Cabot, along with his co-defendant, the Chief Operating Officer of CIP Timothy Kroll ("Kroll"), started transferring funds out of some

---

[1] A TIC investment is a real estate investment in which investors collectively own a piece of commercial real estate and receive a portion of the rental income, or "base rent," after the mortgage payments and operating expenses have been paid.

2

of the subsidiaries' bank accounts before operating expenses and base rent were paid. They used the misappropriated funds to pay for (1) millions of dollars' worth of personal expenses, such as a luxury rental apartment and private school tuition; (2) CIP business expenses; and (3) the operating expenses and base rent of other underperforming TIC investments. From 2008 to 2012, Cabot received $3,700,000 in partnership distributions from CIP, even though CIP lost more than $21,000,000 during the same time period. By the end of 2012, Cabot and Kroll had misappropriated approximately $17 million from the TIC investments.

On May 31, 2016, Cabot pled guilty to one count of securities fraud, in violation of 15 U.S.C. § 78j(b). The District Court at sentencing applied an abuse-of-trust enhancement of two levels and imposed an above-Guidelines sentence under 18 U.S.C. § 3553(a) on account of, among other reasons, the vulnerability of the victims and the harm suffered by the victims beyond the loss amount stipulated in Cabot's plea agreement. Cabot challenges his sentence on procedural and substantive grounds.

**Cabot's Procedural Error Claims**

"We consider the reasonableness of the sentence under an abuse of discretion standard, regardless of whether the sentence was inside or outside the Guidelines range." *United States v. Lifshitz*, 714 F.3d 146, 149 (2d Cir. 2013) (per curiam) (citing *Gall v. United States*, 552 U.S. 38, 51 (2007)). When conducting a review for procedural reasonableness, we remember that "[a] district court commits procedural error where it fails to calculate the Guidelines range (unless omission of the calculation is justified), makes a mistake in its Guidelines calculation, . . . treats the Guidelines as mandatory[,]. . . if it does not consider the § 3553(a) factors, or rests its sentence on a clearly erroneous finding of fact." *United States v. Cavera*, 550 F.3d 180, 190 (2d Cir. 2008) (en banc) (internal citations omitted).

3

### 1. The Abuse of Trust Enhancement

Cabot's first procedural challenge is to the district court's application of an abuse-of-trust enhancement. *See* U.S.S.G. § 3B1.3. Cabot argues that his role was not discretionary, because the distribution of TIC funds was stipulated in the Master Lease Agreements between CIP and the TICs. But we do not take this to mean that Cabot did not have discretion: he was the primary manager of the investments, responsible for finding properties and installing qualified tenants. Cabot was not subject to any supervision and, along with Kroll, moved funds in and out of CIP and TIC bank accounts. *See United States v. Wright*, 160 F.3d 905 (2d Cir. 1998) (finding abuse of trust when the chairperson and sole director of a caretaking facility enjoyed unsupervised discretion over the disbursement of Medicaid funds intended for the benefit of its mentally disabled residents, but used those funds for lavish personal expenditures); *United States v. Valenti*, 60 F.3d 941, 947 (2d Cir. 1995) (finding abuse of trust when the treasurer had authority to issue checks on his own signature and was responsible for the financial records).

Unlike the cases on which Cabot relies, this is not a case of an arm's-length relationship between a fraudster and his victims, in which the victims did not entrust significant discretion to the defendant. *See United States v. Jolly*, 102 F.3d 46, 48 (2d Cir. 1996) ("[T]he abuse of trust enhancement applies only where the defendant has abused discretionary authority entrusted to the defendant by the victim."). The victims here invested their money in the TIC properties and entrusted Cabot to manage those properties for a profit. *See United States v. Hirsch*, 239 F.3d 221, 227–28 (2d Cir. 2001) (finding a relationship of trust where the investors purchased mortgage liens with promised return from the defendant). Cabot thus relied on and abused the trust placed in him to handle the victims' affairs, meriting application of the enhancement.

4

Moreover, even *if* we could discern any error in application of the enhancement—and we cannot—that error would be harmless. The district court here explicitly stated that the sentence would have been the same with or without the enhancement for abuse of trust. *See United States v. Jass*, 569 F.3d 47, 68 (2d Cir. 2009) (concluding that harmless error doctrine applies when district court specifically "stated it would impose the same . . . sentence on [the defendant] however the issue of . . . [the enhancement] ultimately works out" on appeal (internal quotation marks omitted)); *see also Molina-Martinez v. United States*, 136 S. Ct. 1338, 1346–47 (2016).

### 2. Section 3553(a) Assessment

Cabot next argues that the district court erred in its assessment pursuant to 18 U.S.C. § 3553(a) by relying on clearly erroneous and speculative facts regarding the victims' vulnerability and the loss amount. We review a district court's findings of fact at sentencing for clear error. *United States v. Mi Sun Cho*, 713 F.3d 716, 722 (2d Cir. 2013). "Under the clear error standard, if the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Id.* (internal quotation marks and brackets omitted). We discern no error in the court's evaluation of either matter.

As to the vulnerable nature of the victims of Cabot's crime, the district court chose not to apply the Guidelines' "vulnerable victims" enhancement, *see* U.S.S.G. § 3A1.1, but nonetheless said the vulnerability of the victims was "a powerful Section 3553 factor." A105 (Sentencing Transcript). We discern no error, much less clear error, in this assessment. Cabot claims that he marketed his TIC investments to "accredited investors," who are supposed to fit within certain categories, for example by having a minimum net worth. Furthermore, he contends that since

5

the "1031 Exchange," the principal tax mechanism that makes CIP investments attractive, by its terms applies to owners of investment or business properties, *see* 26 U.S.C. § 1031, he had reason to believe his investors were "sophisticated and substantial." Def.-App.'s Brief at 22. But Cabot did not attempt at sentencing to controvert the government's description of the "natural pool of investors that would be attracted to this investment" as older investors, who both are more likely to own property and have less time and ability to recover from catastrophic losses. A82. The district court reasonably concluded that Cabot, even if he did not target vulnerable victims, knew or should have known the nature of his clientele. *United States v. Abiodun*, 536 F.3d 162, 170 (2d Cir. 2008) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.").

Cabot next argues that the district court erred when it took into account losses above the $17 million agreed upon in his plea agreement, claiming they were uncorroborated and speculative. While the district court used $17 million in its Guidelines calculations, and indeed agreed that losses beyond those in the plea agreement should not affect the Guidelines calculation, it noted that "it's quite clear that the losses here do, in fact, exceed that." A105 (Sentencing Transcript). Cabot did not raise any objection before the district court to consideration of this conclusion in the § 3553(a) analysis, so our review is for plain error only. *United States v. Verkhoglyad*, 516 F.3d 122, 127–28 (2d Cir. 2008). We find no such error here.

As Cabot noted, the district court admitted that "it isn't clear . . . how much of [the monetary loss] is attributable to the criminal conduct as opposed to financial circumstances," i.e. the 2008 financial crisis. A78. But this does not mean that considering a potentially higher amount of loss was clearly erroneous. *See Mi Sun Cho*, 713 F.3d at 722. In concluding that

6

the victims' losses weighed in favor of a sentence somewhat above the Guidelines range, the district court did not focus on *monetary* losses alone, but on the "time and energy that the victims have spent trying to recover their money, the anxiety and emotions that these events have had for them, [and] losses to third parties, such as . . . employees . . . who were fired or lost their jobs." A105. The court received dozens of letters detailing such losses, and considering them was not improper. *See United States v. Kaye*, 23 F.3d 50, 53 (2d Cir. 1994) (noting that even though the Guidelines account for the amount of monetary loss, it was not error for the district court to find that they did not adequately account for the *degree* of harm suffered by the victim, "so great an impact from a loss as to leave [the victim] financially dependent on the generosity of others, quite possibly for the rest of her life").

**Cabot's Substantive Error Claim**

Cabot finally challenges the substantive reasonableness of his sentence. We set aside "a district court's substantive determination only in exceptional cases where the trial court's decision cannot be located within the range of permissible decisions." *Cavera*, 550 F.3d at 189 (internal quotation marks and emphasis omitted). In order for the sentence to be unreasonable, it must be "so shockingly high, shockingly low, or otherwise unsupportable as a matter of law that allowing [it] to stand would damage the administration of justice." *United States v. Broxmeye*r, 699 F.3d 265, 289 (2d Cir. 2012). Cabot has demonstrated no such unreasonableness in his above-Guidelines sentence.

The district court's sentence was based on a close examination of the record before it and was well within the scope of its discretion. *United States v. Jones*, 531 F.3d 163, 174 (2d Cir. 2008) ("[I]n determining substantive reasonableness, a reviewing court will set aside only those outlier sentences that reflect actual abuse of a district court's considerable sentencing

discretion."). The sentence was entirely reasonable based on the record and information available to the district court. The district court discussed in great detail the aggravating factors that it found contributed to the above-Guidelines sentence. In the face of the financial crisis, instead of sharing the loss with his investors, Cabot chose to embezzle their money to fund his own lifestyle. Furthermore, the district court concluded that Cabot was not genuinely remorseful, largely because of his attempt—after the order of forfeiture—to hide his income. Based on the victim impact letters, the district court reasonably determined that many of the victims were vulnerable and suffered losses not fully accounted for in the Guidelines calculation.

To the extent that Cabot argues that the district court placed undue emphasis on the harm suffered by the victims, we discern no abuse of discretion in the district court's evaluation of this factor. *Cavera*, 550 F.3d at 191 ("[W]e consider whether the factor, as explained by the district court, can bear the weight assigned it under the totality of circumstances in the case."); *see also Broxmeyer*, 699 F.3d at 289 ("The particular weight to be afforded aggravating and mitigating factors is a matter firmly committed to the discretion of the sentencing judge."). And with regard to the disparity between his sentence and his co-defendant's sentence, which Cabot contests, the district court is not required to consider sentencing disparity among co-defendants. *United States v. Johnson*, 567 F.3d 40, 54 (2d Cir. 2009). In any event, Cabot and Kroll were not similarly situated, as Kroll pled guilty and cooperated with the government. *See United States v. Fernandez*, 443 F.3d 19, 32 (2d Cir. 2006), *abrogated on other grounds by Rita v. United States*, 551 U.S. 338 (2007).

We have considered Cabot's remaining arguments and find them to be without merit.

Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk