UNITED STATES of America, Appellee,

v.

John G. ROCK, Appellant.

No. 94–CR–331.

United States District Court,
N.D. New York.

July 6, 1995.

Robert E. Harris, Albany, NY, for appellant.

Thomas J. Maroney, U.S. Atty., N.D.N.Y. (Sara M. Lord, Asst. U.S. Atty., of counsel), Albany, NY, for U.S.

## MEMORANDUM, DECISION AND ORDER

McAVOY, Chief Judge.

This is an appeal by John G. Rock from a sentence imposed on him by U.S. Magistrate Judge Ralph W. Smith. Rock argues that Judge Smith erred in the determination of his base offense level and in the determination of several enhancements to his sentence.

### I. Background

Appellant John Rock owns and resides at the Split Rail Farm located in Saratoga Springs, New York. Between 1986 and 1988, Rock was alleged to have charged hundreds of individuals and businesses for dumping solid waste at his farm.

On February 19, 1988, a jury found Rock guilty of violating 6 N.Y.C.R.R. § 360.2(b)—operating a solid waste management facility without a permit. Rock was sentenced to pay $1500. Later, on two separate occasions, Rock was again charged with the same violation. (September 14, 1988 and September 15, 1988). On each of these occasions, Rock entered an "Alford" plea (New York State's version of *nolo contendere* ) and was likewise sentenced to pay $1500.

From 1986 to 1988, Rock's dump was also the subject of extensive civil litigation as local and state officials sought to close it down. On November 10, 1987, the Honorable Edward S. Conway, Justice of the Supreme Court of New York, imposed a temporary restraining order on Rock's dumping operation at the Split Rail Farm. That order was vacated on December 1, 1987 and Rock was ordered to apply for a Special Use Permit from the Zoning Board of Appeals of the Town of Milton. In January 1989, Rock's application was denied by the zoning board.

In 1994, Rock was charged with failure to file a federal income tax return for 1988 along with other violations. On September 22, 1994, Rock consented to proceed before U.S. Magistrate Judge Ralph W. Smith, in the misdemeanor count against him. Pursuant to a written plea agreement, Rock pleaded guilty to violating 26 U.S.C. § 7203—willful failure to file a return, supply information, or pay tax. Section 7203 states in full:

Any person required under this title to pay any estimated tax or tax, or required by this title or by regulations made under authority thereof to make a return, keep any records, or supply any information, who willfully fails to pay such estimated tax, make such return, keep such records, or supply such information ... shall in addition to other penalties provided by law, be guilty of a misdemeanor and upon conviction thereof, shall be fined not more than $25,000 ($100,000 in the case of a corporation), or imprisoned not more than 1 year, or both, together with the costs of prosecution.

26 U.S.C. § 7203.

On February 16, 1995, Judge Smith sentenced Rock to the statutory maximum of one year in prison. Judge Smith, in line with the Presentence Report, concluded that a total offense level of 14 was appropriate un-

der the applicable 1987 Sentencing Guidelines. Starting with a base offense level of 10, Judge Smith added 2 levels for specific offense characteristics, 2 levels for obstruction of justice, and 2 levels as adjustment for defendant's role in the offense. The judge then subtracted 2 levels for acceptance of responsibility. The calculated total offense level of 14 allowed for a sentencing range of 15 to 21 months. However, as 26 U.S.C. § 7203 sets a 12 month maximum sentence, Judge Smith sentenced Rock to the full 12 months. Judge Smith also denied Rock's motion for reconsideration of his sentence, as well as bail pending his appeal.

In the Addendum to the Presentence Report, dated November 23, 1994, Rock objected to all of the components of Judge Smith's calculation, except for the 2 level subtraction under U.S.S.G. § 3E1.1(a) for acceptance of responsibility. On appeal, Rock contends that his maximum sentence under the guidelines should have been 0 to 6 months. Rock further asks this court for his immediate release since he has already served 6 months in prison.

## II. Discussion

The statute that sets the scope of review in this case is 18 U.S.C. § 3742. "Upon review of the record, the court of appeals shall determine whether the sentence (1) was imposed in violation of law; (2) was imposed as a result of an incorrect application of the sentencing guidelines; (3) is outside the applicable guideline range, and is unreasonable...." 18 U.S.C. § 3742(e). 18 U.S.C. § 3742(e) further states:

> The court of appeals shall give due regard to the opportunity of the district court to judge the credibility of the witnesses, and shall accept the findings of fact of the district court unless they are clearly erroneous and shall give due deference to the district court's application of the guidelines to the facts.

*Id.; see United States v. Echevarria,* 33 F.3d 175, 178 (2d Cir.1994); *United States v. Deutsch,* 987 F.2d 878, 884–85 (2d Cir.1993). While appellate courts are to give deference to lower courts' finding of facts, appellate courts are to review lower courts' determinations of law on a *de novo* basis. *United States v. Echevarria,* 33 F.3d 175, 178 (2d Cir.1994).

As mentioned above, this district court is sitting as an appellate court to Magistrate Judge Smith's sentencing decision. Therefore, this court is to review Judge Smith's sentencing determination with the same deference as if the imposed sentence arose out of this court and was being decided by the court of appeals. *See* 18 U.S.C. § 3742(g). The court proceeds with this standard in mind.

### A. Rock's base offense level.

Pursuant to U.S.S.G. § 2T1.2, Judge Smith began with a base offense level of 10 since Rock had caused the federal government a tax loss greater than $20,000 but less than $40,000. More specifically, as indicated in the minutes of the sentencing hearing, Judge Smith agreed with the Presentence Report and found that by failing to file his 1988 tax return, Rock had caused the government a tax loss of over $34,000. This figure was derived at after the Judge made a factual finding that Rock had failed to include $74,000 in payments he received from Martin Hutchins in his 1988 federal income tax return.

On appeal, Rock submits that in 1988 he did not receive $74,000 in payments from Martin Hutchins in return for allowing Hutchins to dump at the Split Rail Farm. Accordingly, Rock claims that his income, as reported in the Presentence Report and as considered by Judge Smith, was inflated. He also submits that he is entitled to numerous deductions which serve to offset his alleged $34,000 tax liability. As a result, he contends that he caused no tax loss to the government since his own losses caused him to have no net taxable income for the period.

■ Judge Smith's determination that Rock had caused a net tax loss of $34,000 does not appear to be erroneous. His finding rested in good part on Martin Hutchins' testimony that Rock received approximately $74,000 in income from him in 1988. In attempting to controvert Hutchins' testimony, Rock advances two unsupported asser-

tions. First, Rock asserts that Hutchins signed a certificate stating that he was allowing Hutchins to dump for free and moreover, that the signing was witnessed by two other people. However, that certificate was never entered into evidence. Second, Rock's attorney insists that a witness was to appear and testify at sentencing on Rock's behalf. No such witness ever appeared and no affidavit from this witness was ever obtained. As neither of Rock's assertions are substantiated by the evidence, they are of little merit.

As mandated by 18 U.S.C. § 3742(e), this court gives due regard to the sentencing court's judgement on the credibility of the witnesses. After examination of the evidence that was before the sentencing court, we cannot say that Judge Smith's conclusion that Rock did receive approximately $74,000 from Martin Hutchins was erroneous. Therefore, the $74,000 was properly included in the calculation of the tax loss that Rock had caused.

■ Rock attempts to attack the sentencing court's tax loss calculation by providing a laundry list of deductions to which he claims he is entitled. However, Rock provides few purchase receipts or ownership verifications for these deductions. Likewise, many of his deductions are based on alleged property losses that he claims to have suffered as result of thefts and fire damage. This court sees little merit in these deductions as Rock fails to provide any evidentiary support by way of police reports or insurance claims for these losses.

In sum, Judge Smith correctly determined the amount of the tax loss caused by Rock. Judge Smith properly included the $74,000 that Hutchins paid to Rock and also properly discounted Rock's claimed list of deductions from property losses. As such, the determination that Rock caused a tax loss of approximately $34,000 was correct and the resulting base offense level of 10 is affirmed.

B. U.S.S.G. § 3B1.1(c) enhancement.

■ U.S.S.G. § 3B1.1(a)–(c) states that if the defendant was an organizer, leader, manager or supervisor in a criminal activity, then a 2 level increase in the sentence level is appropriate. "As several courts have noted, a manager or supervisor is one who exercise[s] some degree of control over others involved in the offense." *United States v. Liebman,* 40 F.3d 544, 548 (2d Cir.1994) (citing *United States v. Fuller,* 897 F.2d 1217, 1220 (1st Cir.1990)).

The evidence against Rock on this count is strong. Rock's business was transacted entirely on a cash basis with all bank accounts maintained in his girlfriend Susan Potvin's name. Rock told two I.R.S. agents that she would often prepare the deposit slips and actually deposit the money in the bank. Further, there is undisputed evidence that Potvin wrote a letter to Hutchins, on behalf of Rock, insisting that Hutchins never paid "a dime" for dumping at his farm. Laboratory examination of the handwriting confirmed that the letter was written by Potvin.

Rock presents no defense to the government's proof that he directed Potvin's activities except for the claim that her role in the activity was reasonable given the fact that he has no more than a fourth grade education and is functionally illiterate. This defense lacks merit since the relevant question at issue is whether Rock directed and supervised Potvin's activities and not why he was doing so. With this perspective, Rock's education, or lack thereof, is insufficient grounds on which we would disturb Judge Smith's finding.

On examination of the evidence in the record, this court finds that Rock directed the activities of Potvin in furtherance of his criminal activity. As such, Judge Smith's determination to enhance Rock's sentence by 2 pursuant to U.S.S.G. § 3B1.1(c) was warranted.

C. U.S.S.G. § 3C1.1 enhancement.

The evidence in the record clearly indicates that Rock had directed a waste hauler to withhold evidence, destroy evidence and flee to California. Based on this evidence and the Presentence Report, Judge Smith found a 2 level increase in Rock's sentence for obstruction of justice. On examination of the record, it appears to this court that such an increase was warranted. On appeal, Rock offers no challenge to this increase other

than merely calling it "erroneous." Given the fact that Rock submits no evidence to the contrary, there is no basis to disturb Judge Smith's finding that Rock had obstructed justice.

D. U.S.S.G. § 2T1.2(b)(1) enhancement.

 Judge Smith, in accordance with the recommendation of the Presentence Report, found that a 2 level increase in Rock's sentence was warranted under U.S.S.G. § 2T1.2(b)(1). That section states, "[i]f the defendant failed to report or to correctly identify the source of income exceeding $10,-000 in any year from criminal activity, increase by two levels. If the remaining offense level is less than level 12, increase to level 12." U.S.S.G. § 2T1.2(b)(1). Application note 1 to U.S.S.G. § 2T1.2(b)(1) states, " 'Criminal activity' means any conduct constituting a criminal offense under federal, state or local law." U.S.S.G. § 2T1.2 (Application Note 1, 1991).

In 1987 and 1988, Rock was convicted of violating 6 N.Y.C.R.R. § 360.2(b) on three separate occasions. That section states: "Except pursuant to section 360.1(f) and (g) of this Part, no person shall ... [o]perate a solid waste management facility, except in accordance with a valid operation permit issued to such person by the department pursuant to this part." 6 N.Y.C.R.R. § 360.2(b). Rock argues that a violation of this law constitutes a civil, rather than a criminal, cause of action. As such, he maintains that the pushing of his offense level up to 12 under this sentencing guideline is erroneous. This court disagrees.

It is clear that the New York State Legislature intended violations of 6 N.Y.C.R.R. § 360.2(b) to have criminal ramifications. The statute under which Rock was sentenced, § 71–2703 of the New York State Environmental Conservation Law, allows criminal sanctions against those that violate regulations governing solid waste management and resource recovery facilities. More specifically, section 71–2703 states:

(2) Criminal Sanctions. Any person who, having any of the culpable mental states defined in section 15.05 of the penal law, shall violate any of the provisions of or fails to perform any imposed by titles 3 or 7 of article 27, or any rules and regulations promulgated thereto, or any final determination or order pursuant to this title shall be guilty of a violation and, upon conviction thereof, shall be punished by a fine of not less than one thousand dollars no more than two thousand five hundred dollars a day of violation.

N.Y.Envtl.Conserv.Law § 71–2703 (McKinney 1995); *see also* 55 N.Y.Jur.2d § 178 at 267. The language of this section clearly alludes to punishment for criminal activity if the defendant acts with the required mental state.

Rock's argument that his violations were civil in nature is undermined by the fact that he was convicted on three separate occasions for the same offense. This indicates to this court that Rock was well aware that what he was doing was in violation of the law and serves to support the argument that Rock had the proper mental state to push his subsequent violations into the "criminal" category.

Moreover, it appears that the New York State courts intended Rock to face a criminal conviction. For example, the Uniform Appearance Ticket for Rock's 1987 violation states:

A plea of guilty to his charge is equivalent to a conviction after trial. If you are convicted, not only will you be liable to a fine and or incarceration where provided, but in addition, licenses issued by the Department of Environmental Conservation may be subject to revocation by law.

This language clearly indicates that Rock's conviction was of a criminal nature. Furthermore, two days after the trial in which Rock was found guilty, the judge wrote a letter making it clear that he also treated the case as a criminal matter and did not merely issue tickets containing boilerplate language. The judge's letter indicated that the action is to follow "Criminal Procedure Law" and requested that defendant appear for sentencing. Similarly, it must be noted that New York State's appellate courts treated Rock's action as one of a criminal nature as it travelled through the appellate process.

For all of these reasons, this court concludes that Rock's violations of 6 N.Y.C.R.R. § 360.2(b)(1) were indeed criminal in nature and, as such, a U.S.S.G. § 2T1.2(b)(1) enhancement was appropriate.

 Now turning to Rock's "grandfather clause" argument, Rock contends that he was exempt from the permit requirement statute since the one year "grandfather clause" rule contained in 6 N.Y.C.R.R. § 360.1(f) applies. That section states:

> The solid waste management facilities and operations named in this paragraph are exempt from this part unless they manage waste oil
>
> . . . . .
>
> (x) Sites used solely for the deposition of non-putrescible construction and demolition debris are exempt from this Part provided that: (a) The proscribed site is used exclusively for inert, non-hazardous, non-putrescible construction and demolition debris, will operate for less than one year and is operated in conformance with paragraphs (a)(1), (3), (6), (7), (8), (15), (16) and (20), clause (b)(1)(vii)(*b*) and subparagraph (b)(1)(ix) of section 360.8 of this Part ...

6 N.Y.C.R.R. § 360.1(f)(1)(x)(a). Rock contends that his operation fell within this exemption since his one year grace period ended on September 14, 1988.

This court finds Rock's argument unconvincing as he submits no affidavits or other evidence testifying that he only accepted inert, non-hazardous, non-putrescible waste at his dump. Nor does he submit any evidence tending to show his conformance with the numerous subsections of 6 N.Y.C.R.R. § 360.8 which are required in order to reap the benefits of the exemption. These failures greatly undermine Rock's contentions, and therefore, his contentions are rejected.

Be that as it may, it must be kept in mind that the ultimate decision on the issue of whether Rock's 2 level enhancement under U.S.S.G. § 2T1.2(b)(1) was warranted is non-dispositive to the larger determination of whether the imposition of a 12 month sentence was inappropriate. This conclusion is reached since our base offense level determination coupled with enhancements for role in the offense and for obstruction of justice can alone (i.e without the 2 level enhancement for specific offense characteristics) justify a 12 month sentence even after considering the 2 level deduction for acceptance of responsibility.

## III. Conclusion

For the stated reasons, Judge Smith's imposition of a 12 month sentence is appropriate and, as such, his sentence is affirmed.

**IT IS SO ORDERED.**