UNITED STATES of America, Appellee,

v.

Salvador ECHEVARRIA, Defendant–Appellant.

No. 1311, Docket 93–1729.

United States Court of Appeals,
Second Circuit.

Argued April 22, 1994.

Decided Aug. 26, 1994.

H. Elliot Wales, New York City, for defendant-appellant.

John P. Coffey, Asst. U.S. Atty. S.D.N.Y. (Mary Jo White, U.S. Atty., John W. Auchin-

closs II, Asst. U.S. Atty. S.D.N.Y., of counsel), for appellee.

Before: OAKES, KEARSE, and MAHONEY, Circuit Judges.

MAHONEY, Circuit Judge:

Defendant-appellant Salvador Echevarria appeals from a judgment of conviction entered October 19, 1993 in the United States District Court for the Southern District of New York, Leonard B. Sand, *Judge*, following Echevarria's guilty plea to: (1) making false statements in an application for Social Security disability benefits ("Benefits") in violation of 18 U.S.C. §§ 1001 and 2 (count one); (2) mail fraud in violation of 18 U.S.C. §§ 1341 and 2 (count six); (3) using a false registration number in the course of distributing and dispensing a controlled substance in violation of 21 U.S.C. § 843(a)(2) and (c) (count eleven); and (4) failing to disclose material events affecting his continued right to receive Benefits in violation of 42 U.S.C. § 408(a)(4) and 18 U.S.C. § 2 (count thirteen). The remaining counts of the indictment were dismissed on motion of the United States.

The court sentenced Echevarria to seventy months imprisonment (comprised of thirty-five month sentences on each count, the sentences on counts one and six to run concurrently, and the sentences on counts eleven and thirteen to run concurrently with each other but consecutively to the sentences on counts one and six),[1] three years supervised release, restitution of $296,364, and $200 in mandatory special assessments. On appeal, Echevarria contests several of the sentencing enhancements used in computing this sentence, as well as the disallowance of a downward adjustment for acceptance of responsibility. We set aside the enhancement for exploitation of a position of trust, affirm the remaining enhancements and the disallowance of the downward adjustment, and remand for resentencing.

Background

Echevarria fraudulently held himself out as a physician for several years. On August 5, 1992, a grand jury indicted Echevarria on multiple counts of fraud, alleging that Echevarria had misrepresented himself as a doctor by, *inter alia*, advertising in telephone directories as a physician, displaying false academic credentials, and setting up a medical office. Counts one through five charged Echevarria with falsely describing himself as a "psychiatrist" or "neurologist" in submitting medical evidence in support of "patients'" applications for Benefits in violation of 18 U.S.C. §§ 1001 and 2. Counts six through ten alleged that he committed mail fraud by causing health insurance providers to mail reimbursement payments to him in violation of 18 U.S.C. §§ 1341 and 2. Counts eleven and twelve charged him with unlawfully using a false registration number in the course of distributing and dispensing Tylenol 3 with codeine, a controlled substance, in violation of 21 U.S.C. § 843(a)(2) and (c). Count thirteen alleged that he knowingly concealed and failed to disclose his engagement in substantial gainful activity while receiving Benefits in violation of 42 U.S.C. § 408(a)(4) and 18 U.S.C. § 2.

On March 15, 1993, Echevarria pled guilty to counts one, six, eleven, and thirteen. The ensuing presentence report ("PR") calculated Echevarria's base offense level at six for fraud pursuant to USSG § 2F1.1(a). The PR recommended increases of: (1) eight levels for losses exceeding $200,000 pursuant to *id.* § 2F1.1(b)(1)(I); (2) two levels for more than minimal planning or scheming to defraud more than one victim pursuant to *id.* § 2F1.1(b)(2)(A) and (B); (3) two levels for misrepresenting that he was acting on behalf of a government agency pursuant to *id.* § 2F1.1(b)(3)(A); (4) two levels for conscious

---

1. All of the counts to which Echevarria pled guilty provided a statutory maximum sentence of five years or less. Consecutive sentences were therefore imposed in accordance with USSG § 5G1.2(d), which provides:

 If the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment. In all other respects sentences on all counts shall run concurrently, except to the extent otherwise required by law.

or reckless risk of serious bodily injury pursuant to *id.* § 2F1.1(b)(4); (5) two levels for exploitation of a position of trust pursuant to *id.* § 3B1.3; and (6) two levels for obstruction of justice pursuant to *id.* § 3C1.1. The resulting adjusted offense level was twenty-four. The PR also alluded to a number of factors that might warrant an upward departure, and noted that diminished capacity might be considered a mitigating factor. *See infra* note 2.

The district court accepted the PR recommendations regarding enhancements, added two levels for the vulnerable nature of Echevarria's victims pursuant to USSG § 3A1.1, and denied Echevarria's application for a downward adjustment for acceptance of responsibility pursuant to *id.* § 3E1.1. These determinations resulted in an adjusted offense level of twenty-six, and combined with Echevarria's criminal history category of I to produce a sentencing range of sixty-three to seventy-eight months. Echevarria was sentenced to seventy months imprisonment, as well as the other punishments previously recited.

This appeal followed.

### Discussion

■ Echevarria does not contest the eight-level enhancement for financial loss to the government, two-level enhancement for more than minimal planning, and two-level enhancement for risk of serious bodily injury to others. He argues, however, that: (1) statements that he made during his plea allocution falsely claiming that he was a physician did not justify a two-level enhancement for obstruction of justice; (2) he merits a three-level downward adjustment for acceptance of responsibility based upon his guilty plea; and (3) the two-level enhancements for misrepresenting that he was acting on behalf of a government agency, abuse of a position

of trust, and vulnerable victims are unwarranted and duplicative.[2]

■ In assessing these claims and reviewing the sentence imposed by the district court, we review the court's legal determinations *de novo.* *See United States v. Deutsch,* 987 F.2d 878, 884–85 (2d Cir.1993) (collecting cases). We "accept the findings of fact of the district court unless they are clearly erroneous[,] and ... give due deference to the district court's application of the guidelines to the facts." 18 U.S.C. § 3742(e); *see also Deutsch,* 987 F.2d at 884–85. "In addition, 'disputed sentencing factors need only be proved by a preponderance of the evidence.'" *Deutsch,* 987 F.2d at 885 (quoting *United States v. Rodriguez–Gonzalez,* 899 F.2d 177, 182 (2d Cir.), *cert. denied,* 498 U.S. 844, 111 S.Ct. 127, 112 L.Ed.2d 95 (1990)).

### A. Obstruction of Justice and Acceptance of Responsibility.

Echevarria seeks reversal of the two-level enhancement for obstruction of justice pursuant to USSG § 3C1.1 based upon false claims he made during his plea allocution that he was a physician. He also argues that by pleading guilty in a timely fashion to his underlying fraud, regardless of his "meaningless misstatement" during the plea allocution, he is entitled to a three-level reduction in his sentence for acceptance of responsibility pursuant to USSG § 3E1.1. He contends that impermissible double counting occurred because the district court relied on his statements during the plea allocution both to add two levels under *id.* § 3C1.1 and deny a three-level reduction under *id.* § 3E1.1.

To enhance Echevarria's offense level for obstruction of justice, the district court was required to find that he "willfully obstructed or impeded, or attempted to obstruct or im-

---

**2.** Echevarria also complains that the district court "brushed aside [Echevarria's] long and profound history of psychiatric problems." *See* USSG § 5K2.13, p.s. (lower sentence may be warranted to reflect extent to which reduced mental capacity contributed to commission of offense). Echevarria does not explicitly contend for a downward departure, however, and in any event, we have no authority to review a district court's refusal to award a downward departure

unless the court erroneously believed that it lacked the authority to provide it. *See United States v. Prescott,* 920 F.2d 139, 145–46 (2d Cir. 1990) (collecting cases). There is no claim that Judge Sand was unaware of his authority to grant a downward departure. Further, a sentence imposed within a correctly calculated guideline range may not be disturbed on appeal. *See United States v. Soliman,* 889 F.2d 441, 443 (2d Cir.1990).

pede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense." USSG § 3C1.1; *see also United States v. Booth,* 996 F.2d 1395, 1397 (2d Cir.1993) (per curiam). "In applying this provision in respect to alleged false testimony or statements by the defendant, such testimony or statements should be evaluated in a light most favorable to the defendant." USSG § 3C1.1, comment. (n. 1); *see also United States v. Shonubi,* 998 F.2d 84, 88 (2d Cir.1993).

During his plea allocution, Echevarria insisted that he was a doctor. When asked about his scheme, Echevarria admitted that he falsely held himself out as a psychiatrist, but then asserted: "I am a doctor." Upon further questioning by the district judge, he again stated: "I am not a psychiatrist, but I am a doctor." Echevarria lied once again when he told the court that he had a medical degree from the University of Puerto Rico.

 Echevarria does not deny making these untrue statements, but minimizes their import. He characterizes them as "gratuitous," and claims that both the district court and the government knew that Echevarria was not a physician. This argument is unavailing, because § 3C1.1 expressly applies to attempts to obstruct justice; thus, whether Echevarria's statements were ultimately unconvincing is irrelevant to the applicability of § 3C1.1. *See United States v. Irabor,* 894 F.2d 554, 556 (2d Cir.1990) (whether obstruction was ultimately successful is irrelevant to application of § 3C1.1); *see also United States v. Rodriguez,* 943 F.2d 215, 218 (2d Cir.1991) ("an enhancement for obstruction of justice necessarily contemplates that the obstruction must be discovered at some point"); *cf.* USSG § 3C1.1, comment. (n. 5) (evidence deemed material when "if believed, [it] would tend to influence or affect the issue under determination"). Finally, contrary to a suggestion in Echevarria's reply brief, it seems clear to us that a plea proceeding is part of the "investigation, prosecution, or sentencing" of an offense within the meaning of § 3C1.1. *Cf. id.,* comment. (n. 3(f)) ("providing materially false information to a judge or magistrate" constitutes obstruction of justice).

 We also find that the district judge did not err in denying Echevarria credit for acceptance of responsibility. *See* USSG § 3E1.1, comment. (n. 5) ("The sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on review."). A downward adjustment for acceptance of responsibility is not automatically awarded as a result of a guilty plea. *See Irabor,* 894 F.2d at 557 (citing § 3E1.1, comment. (n. 3)). Echevarria's untruthful statements during the plea allocution evidence his failure to acknowledge the wrongfulness of his acts. *See United States v. Cousineau,* 929 F.2d 64, 69 (2d Cir.1991).

 We reject Echevarria's contention that the district court's reliance on the same statement both to increase his sentence under § 3C1.1 and to deny a reduction under § 3E1.1 constitutes double-counting. As we noted in *United States v. Campbell,* 967 F.2d 20, 25 (2d Cir.1992), "double counting is legitimate where a single act is relevant to two dimensions of the Guidelines analysis."

 Only in "extraordinary cases" is a defendant accorded a reduction for acceptance of responsibility while also receiving an enhancement for obstruction of justice. *See* USSG § 3E1.1, comment. (n. 4). Accordingly, we have denied the § 3E1.1 reduction for acceptance of responsibility, despite a guilty plea, when the defendant's sentence has been enhanced for obstruction of justice pursuant to § 3C1.1. *See, e.g., United States v. Fredette,* 15 F.3d 272, 277 (2d Cir.), *cert. denied,* —— U.S. ——, ——, 114 S.Ct. 2119, 2180, 128 L.Ed.2d 677, 899 (1994); *Irabor,* 894 F.2d at 556–57. In this case, as well, it is appropriate to affirm both the enhancement for obstruction of justice and the denial of a reduction for acceptance of responsibility.

### B. *Misrepresenting Himself as a "State" Physician.*

Echevarria challenges the two-level enhancement pursuant to USSG § 2F1.1(b)(3)(A) for misrepresenting that he was acting on behalf of a government agency. The PR noted that Echevarria told patients

that he was a "state doctor" able to approve applications for Benefits. For example, Echevarria assured an undercover agent seeking assistance for a "disturbed" child that Echevarria was "from the state" and could certify the child for Benefits. Echevarria contends that such statements were intended to indicate only that he had a state medical license, not that he represented a government agency. However, Echevarria points to nothing in the record to suggest that the sentencing court's finding to the contrary was erroneous.

■■■ Echevarria claims that his solitary statement to the undercover agent is insufficient to support this enhancement. Section 2F1.1(b)(3)(A) provides, however, that if the offense "involved ... a *misrepresentation* that the defendant was acting on behalf of a ... government agency [emphasis added]," a two level enhancement is warranted. Echevarria offers no authority for the proposition that multiple infractions are required for application of this enhancement. Furthermore, the PR asserted that Echevarria made this misrepresentation to multiple "patients," citing the statement to the undercover agent only as an example of this practice. The district court was entitled to rely upon the assertions in the PR in the absence of any evidentiary challenge by Echevarria, *see United States v. Streich*, 987 F.2d 104, 107 (2d Cir.1993) (per curiam), especially since the government represented that it had witnesses prepared to support the PR's finding, and Echevarria never requested an evidentiary hearing.

■■■ Nor is this enhancement duplicative of Echevarria's underlying offense. The various frauds to which Echevarria pled guilty involve the use of generally false representations. None require that the misrepresentations involve claims of governmental affiliation.

## C. *Vulnerable Nature of the Victims.*

USSG § 3A1.1 authorizes a two level enhancement "[i]f the defendant knew or should have known that a victim of the offense was unusually vulnerable due to age, physical or mental condition, or that a victim was otherwise particularly susceptible to the criminal conduct." Echevarria argues that: (1) his "patients'" socioeconomic backgrounds are irrelevant to their characterization as vulnerable victims; (2) the government and insurance companies, not his "patients," were the real victims of his criminal conduct; and (3) this enhancement "double counts" the enhancements for abuse of trust, risk to victims, and more than minimal planning. Echevarria points out that the PR did not initially recommend application of this enhancement, and claims that the district court's reliance on *United States v. Bachynsky*, 949 F.2d 722, 735–36 (5th Cir.1991), *cert. denied*, —— U.S. ——, 113 S.Ct. 150, 121 L.Ed.2d 101 (1992), to support the enhancement was misplaced. We reject these arguments.

■■■ As to the socioeconomic status of Echevarria's "patients," although the district court referenced the fact that Echevarria's victims came largely from the Bronx, Echevarria misconstrues the basis of his victims' vulnerability. The enhancement is warranted here because Echevarria "knew or should have known" that his "patients" were "unusually vulnerable due to ... [a] physical or mental condition." USSG § 3A1.1. Echevarria directly targetted those seeking medical attention by posing as a physician, exploiting their impaired condition and luring them to his inadequate and dangerous medical attention for the purposes of defrauding third-party medical insurers.

*Bachynsky* applied § 3A1.1 in factual circumstances closely matching the case at bar. In *Bachynsky*, a doctor submitted false diagnoses to defraud medical insurance companies and the government. Like Echevarria, Bachynsky argued that only the insurers and the government were victims of his fraud offenses. The Fifth Circuit upheld the application of § 3A1.1, however, noting that Dr. Bachynsky's patients were victims both because they falsely believed that they were receiving effective medical attention, and because they were unwitting instrumentalities of the fraud. *Bachynsky*, 949 F.2d at 735. Echevarria's "patients" were similarly duped.

[14] Accordingly, agreeing with the Fifth Circuit, we uphold Judge Sand's conclusion

that "even though there is a scam, ... the economic impact of which is on the government, an enhancement for vulnerable victims is appropriate where the exploitation of patients is part of the scam." *Cf. United States v. Yount,* 960 F.2d 955, 958 (11th Cir.1992) (vulnerable victim need not be victim of the offense of conviction); *United States v. Roberson,* 872 F.2d 597, 608–09 (5th Cir.) (same), *cert. denied,* 493 U.S. 861, 110 S.Ct. 175, 107 L.Ed.2d 131 (1989); *see also United States v. Lee,* 973 F.2d 832, 833–34 (10th Cir.1992) (following *Yount* on this issue, but rejecting § 3A1.1 enhancement on other grounds). *But see United States v. Wright,* 12 F.3d 70, 73 (6th Cir.1993) (§ 3A1.1 applicable only where alleged victim is a victim of defendant's offense of conviction).

■ As to Echevarria's double-counting argument, we reverse application of the exploitation of a position of trust enhancement, *infra.* Thus, there is no possibility that in this case the vulnerable victim enhancement will double count conduct upon which the enhancement for exploitation of a position of trust is based. We also note, however, that there is nothing inherently duplicative in enhancing both for the vulnerability of the victims and an exploitation of a position of trust. These enhancements address separate concerns and may be based upon different elements of a defendant's conduct. *See, e.g., United States v. Kaye,* 23 F.3d 50, 53 (2d Cir.1994) (enhancements imposed for both exploitation of position of trust and targeting of vulnerable victim).

Echevarria also contends that the § 3A1.1 enhancement "double counts" the enhancements for more than minimal planning and risk to victims. The planning aspect is obviously a separable component of his conduct. Similarly, although less obviously, the vulnerability of his victims (i.e., their susceptibility to his criminal conduct) is not identical to the resulting risk (i.e., their exposure to "medical" treatment by an imposter physician).

### D. *Exploitation of a Position of Trust.*

■ Finally, Echevarria argues that his offense did not warrant enhancement for exploitation of a position of trust pursuant to USSG § 3B1.3. He contends that § 3B1.3 is

reserved for those who legitimately occupy, rather than pretend to occupy, a position of trust and then abuse that trust. He also argues that this enhancement is duplicative of the underlying frauds for which he was convicted, all of which (except count thirteen) were premised upon his false representation that he was a legitimate doctor of medicine.

■ We agree with Echevarria regarding this enhancement. The core of the offenses of which Echevarria was convicted (except for count thirteen) was his misrepresentation that he was a qualified physician. His underlying convictions addressed, and punished, that misrepresentation. We deem it anomalous to enhance that punishment pursuant to § 3B1.3, which is directed at the special opportunities for criminal conduct that are available to those who *legitimately* occupy positions of public or private trust. As the commentary to § 3B1.3 explains:

> "Public or private trust" refers to a position of public or private trust characterized by professional or managerial discretion (*i.e.*, substantial discretionary judgment that is ordinarily given considerable deference). Persons *holding such positions* ordinarily are subject to significantly less supervision than employees whose responsibilities are primarily non-discretionary in nature. For this enhancement to apply, the position of trust must have contributed in some significant way to facilitating the commission or concealment of the offense (*e.g.*, by making the detection of the offense or the defendant's responsibility for the offense more difficult).

*Id.,* comment. (n. 1) (emphasis added); *see also Kaye,* 23 F.3d at 54. We do not believe that an imposter "hold[s]" the position that he purports to occupy within the meaning of this commentary.

The government points out that Echevarria went to great lengths to carry off his imposture as a physician, but this factor is adequately addressed by the § 2F1.1(b)(2)(A) enhancement for more than minimal planning. The prosecution also invokes our opinion in *United States v. Castagnet,* 936 F.2d 57 (2d Cir.1991), but that case dealt with the other aspect of § 3B1.3, enhancement for use

of a special skill, and does not bear significantly upon the § 3B1.3 issue presented for resolution in this case.

## Conclusion

We reverse the sentencing enhancement for abuse of a position of trust, affirm the remaining enhancements and the denial of a downward adjustment for acceptance of responsibility, and remand for resentencing.