**UNITED STATES of America, Appellee,**

v.

**Alan David HARRIS, Defendant–Appellant.**

**No. 60, Docket 93–1624.**

United States Court of Appeals, Second Circuit.

Argued Sept. 14, 1994.

Decided Oct. 25, 1994.

Bradley D. Simon, Asst. U.S. Atty., Brooklyn, NY (Zachary W. Carter, U.S. Atty., E.D.N.Y., Susan Corkery, Asst. U.S. Atty., of counsel) for appellee.

Gail Jacobs, Great Neck, NY, for defendant-appellant.

Before: LUMBARD, OAKES, and ALTIMARI, Circuit Judges.

LUMBARD, Circuit Judge:

Alan David Harris appeals from the 71 month prison sentence imposed by Judge Wexler in the Eastern District of New York after his plea of guilty to 25 counts of mail and wire fraud. Harris argues that Judge Wexler denied him due process of the law by failing (1) to rule on his sentencing applications, (2) to give early notice of *ex parte* letters to the court, (3) to permit cross-examination of witnesses, and (4) to maintain an impartial proceeding. Harris also claims erroneous decisions on offense level adjustments with respect to acceptance of responsibility, unusually vulnerable victims, abuse of trust or use of a special skill, and the extent of the victims' losses. Finally, he argues ineffective assistance of counsel at sentencing. We affirm.

In 1992, the U.S. Postal Service began investigating allegations of fraud and misrep-

resentation in connection with real estate investment partnerships Harris organized and promoted between 1987 and 1993. On December 4, 1992, Harris was arrested, and on May 7, 1993, he was indicted on 40 counts of mail and wire fraud under 18 U.S.C. §§ 1341 and 1343. On June 1, he pleaded guilty to 25 of the 40 counts. He admitted to misrepresenting to investors the number of future tenants in the properties and the sums already raised, and to holding himself out as an attorney despite his disbarment in 1987. He further acknowledged his use of investors' funds for personal purposes. In exchange for the plea and for a promise of full restitution, the remaining counts were dismissed and further investigation into the involvement of his wife and son was discontinued.

On August 7, the Probation Department issued its Presentence Report suggesting under the Sentencing Guidelines a total offense level of 18, which carries a prison term of 27 to 33 months. The base offense level was set at six. U.S.S.G. § 2F1.1(a). Thirteen levels were added to reflect the victims' loss of over $2,500,000, and two levels for more than minimal planning. U.S.S.G. § 2F1.1(b)(1)(N), (2)(A). Three levels were deducted for acceptance of responsibility. U.S.S.G. § 3E1.1.

Harris's counsel Paul Rooney objected to the total loss amount, arguing that the figures in the report for amounts invested were incorrect, and that repayments made by Harris, tax deductions that might be available to victims, and "personal loans" made to Harris should be excluded from the total. He also submitted a letter to Judge Wexler seeking a downward departure under Guidelines section 5K2.0 and a sentence at the low end of the range.

In the months following the plea, the fraud victims and their attorneys and accountants sent letters to Judge Wexler stating their feelings of betrayal and disgust as well as the financial losses they had suffered. These letters included a memorandum of law written by the attorney for investors Timothy and Michael Muir, advocating a sentence eventually adopted by Judge Wexler. The judge also received letters from Harris himself, his wife, three children, daughter-in-law, mother-in-law, housekeeper, and friends.

On August 27, the first day of sentencing, Harris and his counsel Rooney each made statements to the court asking for clemency. The government presented as witnesses victims Timothy and Michael Muir, Carlos Vasquez, and Marty Ingels, and the Muirs' attorney. After Ingels's lengthy and vitriolic testimony, Judge Wexler declined to hear Rooney, and instead adjourned until September 2, announcing his intention to deny the acceptance of responsibility reduction and to add points based on the vulnerability of the victims and abuse of trust or use of special skills. He also excused the witnesses from returning the next week, and made reference to the letters from the victims, at which point Rooney said that he had not seen these letters. Rooney later received copies.

On September 2, the government called Postal Inspector John La Perla and victims Edith Burghardt and Carlos Vasquez as witnesses. Harris called no witnesses. After hearing arguments concerning the contested adjustments, Judge Wexler denied the three level reduction for acceptance of responsibility, and added two levels each for vulnerable victims and for use of special skills. The total offense level was thus raised to 25, with a corresponding range of 57 to 71 months imprisonment. Judge Wexler imposed a sentence of 71 months in jail, 3 years supervised release, and a $50 mandatory assessment for each of the 25 counts.

■ Harris makes several due process claims. First, he faults the court for not explicitly ruling on his counsel's application for a downward departure or for a sentence at the low end of the range. However, the district court's exercise of discretion is generally unreviewable when it imposes a sentence within a Guideline range, *United States v. Soliman*, 889 F.2d 441, 443 (2d Cir.1989), or denies a downward departure, *United States v. Ritchey*, 949 F.2d 61, 63 (2d Cir. 1991). The court need not articulate its reasons. *See United States v. Lawal*, 17 F.3d 560, 563 (2d Cir.1994).

■ Next, Harris contends that Judge Wexler received numerous letters from the

victims urging stiff penalties, but did not share them with defendant's counsel. Harris's heavy reliance on *United States v. Curran,* 926 F.2d 59 (1st Cir.1991), where the court afforded defendant no opportunity to challenge letters written by adverse witnesses, is misplaced. Since the proceedings were adjourned and Harris had over one week in which to consider the letters and prepare a response, which his counsel did, Harris received adequate "notice of and an opportunity to respond to information to be considered by the sentencing court, in order that he not be sentenced on the basis of misinformation." *United States v. Copeland,* 902 F.2d 1046, 1050 (2d Cir.1990) (*citing Townsend v. Burke,* 334 U.S. 736, 741, 68 S.Ct. 1252, 1255, 92 L.Ed. 1690 (1948)). There is no claim that the letters contained inaccuracies or that the court was misled.

■ Harris then objects to his lack of opportunity to cross-examine the witnesses who testified on August 27. Rooney, however, did not ask for an opportunity to cross-examine them; he merely asked for an opportunity to speak—"may I just respond briefly to some of the matters that were discussed?"—which he was later allowed on the second day of sentencing. Nor did Rooney object when Judge Wexler told the witnesses that they need not return on September 2. In any event, we find Harris's claim without merit. Though conceding that defendants have no right to confrontation at sentencing, Harris cites no authority to support his claim that the defendant has a right to cross-examine witnesses called to testify. Nor does Harris say what cross-examination might have revealed. In fact, he does not claim that the witnesses misled the court in any way. Much of the testimony simply corroborated information contained in letters to the court.

In sum, the hearing was fair in all respects. Judge Wexler conducted the proceedings in a fair manner and with due respect to the defendant's rights. None of Harris's complaints indicates a violation of his constitutional rights.

Harris also claims various errors in the district court's determination of his total offense level. We disagree.

■ Judge Wexler denied Harris a reduction for acceptance of responsibility. For such a reduction, the defendant must "clearly demonstrate[ ] acceptance of responsibility for his offense." U.S.S.G. § 3E1.1(a). Appropriate considerations for the judge include truthful admission of the offense and other relevant conduct, voluntary termination of criminal conduct, voluntary payment of restitution prior to adjudication of guilt, post-offense rehabilitative efforts, and timeliness of acceptance of responsibility. U.S.S.G. § 3E1.1 application note 1. Such evidence "may be outweighed by conduct of the defendant that is inconsistent with ... acceptance of responsibility. A defendant who enters a guilty plea is not entitled to an adjustment under this section as a matter of right." U.S.S.G. § 3E1.1 application note 3. Since the "sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility ... [his] determination ... is entitled to great deference on review." U.S.S.G. § 3E1.1 application note 5.

In Harris's favor are his timely plea of guilty at arraignment, his cooperation with and production of documents to the postal inspector and probation office, and his seeking of therapy for his bipolar mental disorder. Yet many countervailing factors support the district court's decision. After the plea Harris failed to make restitution as promised; and while he claims that he made voluntary restitution before his plea, these repayments were small, infrequent, and hardly voluntary, as the victims were pressing him for repayment and bringing suit to recover their monies. He also transferred funds to his mother-in-law with the likely intent of sheltering them from seizure.

Judge Wexler denied the reduction, however, because "[Harris was] still doing what [he wasn't] supposed to right after [he was] arrested and as late as June when the trial was about to start, [he was] trying to influence witnesses." The record shows numerous instances of such behavior. Carlos Vasquez stated that Harris tried to dissuade him from appearing at the June 1 detention hearing, intimating that if he testified, Vasquez would not be repaid the money he invested. Timo-

thy Muir testified that Harris induced him to invest a further $100,000 in February 1993; investor Sandra Finch also entrusted money to Harris that month.

■ We reject Harris's claim that a defendant's pre-plea conduct may not be considered to deny the reduction. There is no basis in law or logic for a sentencing judge to limit the evidence only to what defendant did after his plea of guilty. All his conduct before the plea may be relevant to a defendant's acceptance of responsibility.

In any event, Harris's behavior after the plea also shows failure to accept responsibility. Both Muirs wrote to the court that at a chance meeting with Harris on July 18, 1993, he showed no remorse, stating "If you hadn't brought in the postal inspector everything would have worked out." The Muirs and the accountant for investor Patricia Capone also claim that the Schedule K–1 tax forms Harris submitted to them in July 1993 contained falsehoods. Furthermore, the attorney for Marty Ingels and Shirley Jones Ingels recounted a discussion in August 1993 with Harris, in which Harris showed his willingness to sign a confession of judgment only under unreasonable terms.

Harris next contests two adjustments not recommended in the presentence report. The district court applied upward adjustments because Harris's victims were unusually vulnerable, and because Harris used special skills. We accord due deference to the court's application of the Guidelines to the facts. 18 U.S.C. § 3742(e). We find no abuse of discretion. *See United States v. Booth,* 996 F.2d 1395, 1397 (2d Cir.1993).

■ Guidelines section 3A1.1 allows a two level increase in the offense level "[i]f the defendant knew or should have known that a victim of the offense was unusually vulnerable due to age, physical or mental condition, or that a victim was otherwise particularly susceptible to the criminal conduct." Rachelle Harris, a grieving widow, Edith Burghardt, then a 71 year old widow, and Carlos Vasquez, then a 23 year old recent accident victim, fall under this category. By virtue of their ages and difficulties in providing for themselves, they were particularly suscepti-

ble to alluring promises of financial security. Harris approached Rachelle, his sister-in-law, at about the time of her husband's funeral; overtures to Vasquez followed just days after his case was settled, while he was still in the hospital.

■ Guidelines section 3B1.3 allows a two level increase "[i]f the defendant abused a position of ... trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense." Judge Wexler was justified in imposing the two levels for use of special skills. Harris used lawyering skills instrumental to his schemes: he had Vasquez execute a power of attorney, drafted a codicil to Edith Burghardt's will, and prepared documents for the Muirs to execute. Contrary to Harris's contention, this enhancement does not result in double counting. The adjustment is grounded not on Harris's holding himself out as an attorney but on the use of skills.

■ Harris also objects on various grounds to the calculation of loss to victims under Guidelines subsection 2F1.1(b)(1). Harris contends that repayments to the investors should be excluded from the total loss. In *United States v. Mucciante,* 21 F.3d 1228, 1238 (2d Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 361, —— L.Ed.2d —— (1994), we stated that "loss does not always equal the actual financial harm suffered by the victim," and rejected credit for sums of money the defendant returned or repaid. Likewise, we reject credit for any tax deductions that could be taken by the victims.

At sentencing, Harris's counsel retracted his objection to the inclusion of amounts which Harris called "personal loans" as part of the loss. At any rate, the sums received from Rachelle Harris properly were included as they were amounts obtained through fraud. Lastly, even were we to accept Harris's claim that the Presentence Report incorrectly listed the amounts invested, his own figure of $2,404,000 plus the $183,000 "loaned" from Rachelle Harris still exceeds $2,500,000.

Finally, we are not persuaded that Harris had ineffective assistance of counsel. Counsel's conduct did not fall below "an objective

standard of reasonableness" under "prevailing professional norms," nor does Harris "affirmatively prove prejudice," that is, demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington,* 466 U.S. 668, 688, 693–94, 104 S.Ct. 2052, 2064, 2067–68, 80 L.Ed.2d 674 (1984). Even had sentencing counsel done as Harris claims he should have done, there is no reason to believe the court would have imposed a lighter sentence.

We have considered all of Harris's arguments and find them meritless.

Affirmed.