**UNITED STATES of America, Appellee,**

v.

**Richard J. BORST, Defendant–Appellant.**

**No. 1277, Docket 94–1445.**

United States Court of Appeals, Second Circuit.

Argued April 11, 1995.

Decided July 27, 1995.

Herbert L. Greenman, Buffalo, NY (Lipsitz, Green, Fahringer, Roll, Salisbury & Cambria, Buffalo, NY, of counsel), for defendant-appellant.

Gretchen L. Wylegala, Asst. U.S. Atty. W.D.N.Y. (Patrick H. NeMoyer, U.S. Atty., of counsel), for appellee.

Before: FEINBERG, WALKER, and CABRANES, Circuit Judges.

WALKER, Circuit Judge:

Defendant-appellant Richard Borst appeals from a judgment of conviction in the United States District Court for the Western District of New York (Richard J. Arcara, *District Judge*), following Borst's guilty plea to committing bank fraud in violation of 18 U.S.C. § 1344 and making false statements to a bank in violation of 18 U.S.C. § 1014. A Presentence Investigation Report ("PSR") recommended, among other things, that the district court apply U.S.S.G. § 3A1.1, which provides for an upward adjustment if the victim was vulnerable. The defense did not contest the facts presented in the PSR but objected to the application of § 3A1.1 to those facts. Nonetheless, Judge Arcara made a two-level upward adjustment pursuant to § 3A1.1 (resulting in an offense level of 15) and sentenced Borst to a twenty-two-month term of incarceration, followed by a five-year term of supervised release. In addition, Borst was required to pay $122,000 in restitution to Marine Midland Bank. Borst now appeals on the grounds that the enhancement of his sentence under § 3A1.1 was inappropriate.

## BACKGROUND

The district court adjusted the base offense level pursuant to U.S.S.G. § 3A1.1 based on transactions between Borst and three couples for whom Borst obtained mobile home financing during the period from July, 1992 through February, 1993. The three couples responded to Borst's advertisements in local newspapers offering 100 percent financing for mobile home purchases through his company, Chautauqua Rent to Own Approved, Inc. ("Chautauqua"). In each instance, Borst offered to handle all of the paperwork in obtaining loans for the couples from Marine Midland Bank. Borst then submitted documentation to the bank that contained false statements regarding the year, model, purchase price, and serial number of the mobile homes.

The first of the three couples, the Russells, responded to advertisements Borst ran in the summer of 1992 after learning that their limited income disqualified them from receiving standard financing. Borst offered to handle all of the paperwork for a fee of $200 to be paid immediately. After Borst prepared the documentation for the loan, the Russells met him at Marine Midland Bank to sign the promissory note. At that time, Mrs. Russell noticed a discrepancy between the sales agreement Borst had prepared, which indicated that they were purchasing a 1988 Skyline mobile home, and the bank's promissory note, which stated that the mobile home was a 1992 model. Borst explained away the discrepancy as a means of expediting the transaction. Mrs. Russell later informed the probation officer that she accepted Borst's explanation and overlooked the discrepancy because her diabetic husband required constant medical care and they were temporarily homeless. The Russells eventually took possession of a 1988 Skyline mobile home.

A few months later, the Seekings, another couple who feared they would be unable to receive financing for a home because of their debt and Mr. Seekings's disabilities, responded to an advertisement from Chautauqua regarding a mobile home on two acres of land. Borst told the couple he had established a business relationship with Marine Midland Bank and would handle all of the necessary paperwork for the mobile home loan. A few weeks later, Borst and Mrs. Seekings met so she could sign the sales agreement. Following Borst's instructions, Mrs. Seekings then picked up the loan check and later signed it over to him. The Seekings briefly took possession of the home, but they were soon evicted because Borst had not paid the seller.

Mrs. Seekings later told the probation officer that Borst had suggested that this was the last time the Seekings would be able to own their own home because of Mr. Seekings's ill health. In fact, she elaborated, it was because of her husband's failing health and their lack of housing that she failed to question Borst's business practices.

Four months later, the Maltbies also contacted Borst for help in financing a particular mobile home for which they had previously been unable to obtain a loan. Borst charged and received a $300 fee for his financing services. He handled the paperwork and arranged for the couple to meet with a Marine Midland representative to sign a promissory note and to receive a check payable to the Maltbies and Borst. Thereafter, Mr. Maltbie brought the check to Borst's home, endorsed it, and left it with Borst.

A few days later, the home the Maltbies contracted to purchase was destroyed in a storm. Borst failed to return the check on the basis that the Maltbies had signed a contract. The Maltbies later discovered that the promissory note they signed was not for the 1986 Titon mobile home they had intended to purchase, but for a 1993 Astro mobile home.

In determining Borst's sentence, the district court found that the facts described above and presented in the PSR were not in dispute. Consequently, the district court adopted them in its findings of fact and incorporated them into the record. It found that Borst had used "the promise of a hundred percent guaranteed financ[ing] as a lure to attract" the business of the three couples. Inasmuch as Borst had access to the financial records of all three couples and had met them all personally, the court concluded that Borst should reasonably have been aware of their circumstances. Thus, because Borst "knew or should have known that these individuals were susceptible to his criminal conduct and less likely to thwart the crime," the court applied a two-level upward adjustment under § 3A1.1.

## DISCUSSION

Borst challenges the application of U.S.S.G. § 3A1.1 on the grounds that 1) there was no indication he targeted anyone because of their physical incapacities; 2) the victim's socioeconomic background status should not serve as an independent ground for an enhancement; 3) there was no proof that Borst was able to commit the crimes as a direct result of the victim's financial status; and 4) certain factual allegations in the PSR

were erroneous. At oral argument, Borst's counsel further contended that the bank, and not any borrower of the funds brokered by Borst, was the true "victim" for the purposes of a § 3A1.1 enhancement. We find none of these claims to be persuasive.

Section 3A1.1 applies if "the defendant knew or should have known that a victim of the offense was unusually vulnerable due to age, physical or mental condition, or that a victim was otherwise particularly susceptible to the criminal conduct." In this case, the district judge focused on the final clause: "that a victim was otherwise particularly susceptible." Unlike the factors specified for vulnerability, this language does not limit the reasons for finding a victim vulnerable. *United States v. Hershkowitz*, 968 F.2d 1503, 1506 (2d Cir.1992). In assessing whether the victim is susceptible to the criminal conduct, the court must consider the totality of the circumstances, including the victim's physical and financial condition and the nature of the crime. *Id.*

According due deference to the court's application of the Guidelines to the facts, 18 U.S.C. § 3742(e); *United States v. Harris*, 38 F.3d 95, 99 (2d Cir.1994), *cert. denied*, ── U.S. ──, 115 S.Ct. 1269, 131 L.Ed.2d 147 (1995), we find that in light of the totality of the circumstances, the victims were "less likely to thwart" and therefore were susceptible to Borst's conduct, *see United States v. Kaye*, 23 F.3d 50, 54 (2d Cir.1994), and that Borst had actual or constructive knowledge of such susceptibility. Contrary to Borst's assertions, the very fact that the couples were in such dire financial straits enabled him to commit the crimes for which he was convicted. Mrs. Seekings and Mrs. Russell specifically indicated that because of their difficult circumstances they were willing to overlook Borst's suspect business practices. In addition, because Borst had access to the victims' financial records, he had actual or constructive knowledge of the couples' vulnerability as a result of their financial difficulties.

Borst suggests that the vulnerability requirement of § 3A1.1 cannot be fulfilled solely on the basis of the couples' socioeco-

nomic circumstances. Since actual or constructive knowledge is a requirement for the guideline adjustment, Borst argues implicitly that unless he knew of other factors—such as the medical condition of some of the couples—§ 3A1.1 is not applicable to this case. However, even if Borst were not fully aware of the medical conditions of some of the victims, as he alleges, he was clearly aware of their financial predicaments. Because the final clause of § 3A1.1 does not restrict the reasons for a victim's susceptibility to the criminal conduct, the couples' precarious financial situation alone may serve as the sole basis of a § 3A1.1 enhancement. Such an enhancement is particularly appropriate when, as in this case, the success of the defendant's criminal scheme depended on the victim's financial desperation. *See Harris*, 38 F.3d at 99 (finding that victims who had difficulty "providing for themselves ... were particularly susceptible to alluring promises of financial security").

■ The record, however, demonstrates that Borst also knew or should have known of Mr. Seekings's and Mr. Russell's medical conditions from his contact with those couples. Indeed, at sentencing, Borst did not specifically refute Mrs. Seekings's statement to the probation officer that Borst had told her that this might be the last time they would be able to purchase their own home due to her husband's deteriorating health. To the extent that Borst now wishes to challenge factual findings that he did not challenge below, he has waived this right. *See United States v. Feigenbaum*, 962 F.2d 230, 233 (2d Cir.1992). We therefore conclude that on the basis of the undisputed record, the facts were such that the victims were susceptible to the criminal conduct, thus satisfying § 3A1.1.

Finally, we turn to Borst's claim raised at oral argument that the § 3A1.1 enhancement was inappropriately applied because the three couples were not the actual victims of Borst's crimes. This court previously addressed a similar point in *United States v. Echevarria*, 33 F.3d 175, 180–81 (2d Cir. 1994). In that case, the defendant pled guilty to fraudulently misrepresenting himself as a physician and submitting invalid

"medical evidence" to support his patients' claims for social security disability and insurance benefits. *Id.* at 177. Among the claims raised on appeal was that the government and insurance companies, not the defendant's "patients," were the true victims of his criminal conduct, rendering inappropriate a § 3A1.1 enhancement on the basis of the patients' vulnerability. *Id.* at 180. We followed the Fifth Circuit's decision in *United States v. Bachynsky*, 949 F.2d 722 (5th Cir. 1991), *cert. denied*, —— U.S. ——, 113 S.Ct. 150, 121 L.Ed.2d 101 (1992), which involved similar facts, and we found that Echevarria's "patients" were duped "because they falsely believed that they were receiving effective medical attention, and because they were unwitting instrumentalities of the fraud." *Echevarria*, 33 F.3d at 180. As a result, we upheld the lower court's sentencing enhancement on the grounds that even if the government felt the primary economic impact of the defendant's activities, "an enhancement for vulnerable victims is appropriate where the exploitation of patients is part of the scam." *Id.* at 181 (quotations omitted). Several circuits have adopted a similar position. *See, e.g., United States v. Haggard*, 41 F.3d 1320, 1325–26 (9th Cir.1994); *United States v. Lee*, 973 F.2d 832, 833–34 (10th Cir.1992); *United States v. Yount*, 960 F.2d 955, 957–58 (11th Cir.1992); *Bachynsky*, 949 F.2d at 735–36. *But see United States v. Wright*, 12 F.3d 70, 73–74 (6th Cir.1993) (vulnerable victim must be victim of defendant's offense of conviction).

■ As the Ninth Circuit has stated, in determining whether a § 3A1.1 adjustment is appropriate,

> courts properly may look beyond the four corners of the charge to the defendant's underlying conduct in determining whether someone is a "vulnerable victim" under section 3A1.1. By the words of the provision itself, no nexus is required between the identity of the victim and the elements of the crime charged.

*Haggard*, 41 F.3d at 1326. Further, in making sentencing adjustments, the district court is required to consider "all harm that resulted from the [defendant's] acts and omis-

sions." U.S.S.G. § 1B1.3(a)(3); *see also Haggard*, 41 F.3d at 1326.

■ Whether or not the three couples in the case before us were "unwitting instrumentalities" of Borst's criminal conduct in light of their apparent knowledge of Borst's misrepresentations to the bank, they were exploited and suffered harm as a result of his actions. Borst's criminal conduct resulted in harm to all three couples. The Russells and the Maltbies paid Borst a fee for loans that they would not possibly be able to repay, with the result that their homes were subject to likely foreclosure. The Seekings suffered an even greater harm in being evicted as a result of Borst's failure to pay the seller of their home, a harm made worse by Mr. Seekings's deteriorating health. Finally, Borst's actions victimized the Maltbies when, after their purchased home was destroyed, Borst failed to return their bank check to them. The three couples' financial and medical vulnerabilities made them easy targets for exploitation by Borst. *Cf. Echevarria*, 33 F.3d at 180. Thus, we conclude that even though the harm Borst caused the three couples was "not an element of any of the crimes of which he was convicted, the district court did not err in considering them 'vulnerable victims' for purposes of section 3A1.1." *Haggard*, 41 F.3d at 1326.

## CONCLUSION

For the reasons set forth above, the judgment and sentence of the district court are affirmed.