97 F.3d 1454
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Frank CLAY, a/k/a Frank Stevenson, and Pamela Reese,
Defendants-Appellants.
 No. 95-3844, 96-1200.
 United States Court of Appeals, Seventh Circuit.
 Argued May 20, 1996.
Decided Sept. 26, 1996.
 
 Before CUDAHY, COFFEY and RIPPLE, Circuit Judges.
 
 ORDER
 
 1
 Frank Clay conducted a wide variety of fraudulent activities associated with bank loans. The most extensive of these activities was a mail fraud scheme that took advantage of homeowners who were threatened with foreclosure. Clay and an accomplice induced these homeowners to engage in a series of transactions, promising that the transactions provided a way for the homeowners to obtain loans that would enable them retain their property. In fact, the transactions allowed Clay to effectively acquire the homeowners' equity in their homes. To facilitate these transactions, Clay enlisted the help of numerous "straw buyers" who were complicit in the scheme. Clay also took the lead in a number of smaller, unrelated criminal enterprises in which he and his accomplices fraudulently obtained bank loans for themselves. Pamela Reese willingly participated in one of these smaller schemes. All of these crimes took place in Illinois, and they were very much like a series of other crimes that Clay perpetrated in Wisconsin.
 
 
 2
 The Illinois crimes are the only subject of this case. With respect to these crimes, the government indicted Clay on thirteen counts of mail fraud in violation of 18 U.S.C. § 1341, three counts of bank fraud in violation of 18 U.S.C. § 1344, one count of making a false statement to a bank in violation of 18 U.S.C. § 1014 and three counts of using a false social security number in violation of 42 U.S.C. § 408. At the time of the indictment, Clay had already been convicted and was serving a sentence of 20 months for the Wisconsin crimes. The government also indicted Reese in Illinois on two counts of mail fraud under § 1341. Reese pleaded guilty to one count of mail fraud, and, after a bench trial, the district court convicted Clay on all but four of the mail fraud counts. It sentenced him to a prison term of 68 months, which was to run concurrently with his Wisconsin sentence, and to a term of five years of supervised release. It also ordered him to pay restitution in the amount of $18,747.59 and a special assessment of $800. Reese was sentenced to three years of probation, including four months of work release. She also had to pay a $1000 fine and a $50 special assessment. Clay and Reese both appeal their sentences.
 
 
 3
 Clay assigns four instances of error involving the district court's application of the sentencing guidelines. First, he contends that the court erroneously applied § 3E1.1(a) of the guidelines when it denied him a two-level reduction in his guidelines score for the acceptance of responsibility. In answering the question whether a defendant has admitted responsibility, the district court makes factual findings that we review for clear error. United States v. McDuffy, 90 F.3d 233, 234 (7th Cir.1996).
 
 
 4
 Clay acknowledges that this reduction is rarely awarded to defendants who go to trial. See United States Sentencing Commission, Guidelines Manual § 3E1.1, cmt. n. 2. It may be applied in such situations when the defendant admits the essential facts relating to his crime but goes to trial to contest the law that applies to those facts. It does not apply to defendants who put the government to its burden of proof at trial by denying factual elements of their guilt. Id. Clay believes that he fits into the small group to whom the reduction applies because he offered to plead guilty before trial and because he did not put on much of a case at trial. The government points out that Clay's proposed plea agreements explicitly refused to include any admission of guilt and that Clay did try to undermine the evidence that the government offered at trial. Moreover, even after trial, Clay continued to deny that he ever had any criminal intent, although he did admit the conduct that gave rise to his crimes. Clay does not dispute the facts noted by the government, and, in light of them, we cannot conclude that the district court clearly erred in finding that Clay had not accepted responsibility.
 
 
 5
 Clay also argues that the district court improperly accounted for his Wisconsin crime and sentence when it calculated his sentence for the instant crimes. His argument on this point is, however, a little obscure. The essence of the argument is that the Wisconsin crime was part of the same course of conduct that led to the instant offense and that his sentence here should reflect this overlap. He first asserts that the adjustment for this overlap could be effected through the application of § 4A1.2 of the guidelines. That section is, however, irrelevant in this case. It controls the calculation of a defendant's criminal history score when the defendant's criminal history includes multiple convictions and sentences, some of which may overlap. Here, Clay had only one prior conviction and sentence, which involved his crimes in Wisconsin; so § 4A1.2 cannot possibly apply. But Clay's argument really seems to proceed from another guidelines provision, § 5G1.3, which governs how courts are to account for undischarged terms of imprisonment in their application of the guidelines. Because it still had two months left to run at the time of the Illinois sentencing, Clay's Wisconsin sentence is an undischarged term of imprisonment. Section 5G1.3 provides a methodology for accounting for such undischarged terms, but courts are only required to consider the methodology; they are not required to follow it. Section 5G1.3 essentially serves as a guide to the court's exercise of discretion, and courts may decline to follow the section as long as they explain why they have done so. United States v. Sorenson, 58 F.3d 1154, 1158-59 (7th Cir.1995). At Clay's sentencing hearing, the district court discussed the application of § 5G1.3 at some length, clearly indicating that it considered this methodology. Moreover, the court followed this methodology in precisely the way that Clay suggested here. The court treated the Illinois and Wisconsin crimes as if they were one, ruling that his sentence should be 68 months and that his time served in Wisconsin should count against this sentence. This ruling is essentially what Clay had asked for, and it does not constitute an abuse of discretion.
 
 
 6
 In calculating the guidelines score, the court increased Clay's offense level by two levels for his role in planning the crimes and by a further four levels for his role as a leader of the criminal activity. Clay argues that these enhancements involved double-counting because both enhancements involve the same conduct. This contention is not based on any particular reading of the facts of this case but rather on the rather metaphysical proposition that a planner is necessarily a leader and a leader is necessarily a planner. We have recently held that this proposition does not always control the application of these two provisions. It is not impossible ever to find that a defendant was both a leader and a planner. See United States v. Briscoe, 65 F.3d 576, 591 (7th Cir.1995). The leadership and planning enhancements are not mutually exclusive and may be applied to the same defendant as long as there is evidence to support each. In this case, the district court specifically asserted that different kinds of conduct supported each of these enhancements. It noted that the crimes of which Clay was convicted were very complicated and required a high degree of deviousness in their planning; and it noted that they involved many accomplices who needed to be directed and organized. Because there was evidence in the record to support findings of both deviousness and direction, the district court's application of these two enhancements was not error.
 
 
 7
 Finally Clay argues that the district court erred in enhancing his guidelines score by two levels in accordance with § 3A1.1 because many of his victims were unusually vulnerable. Clay admits that many of his victims were individuals who were in precarious or threatening financial circumstances, but he contends that this circumstance does not lead to vulnerability, at least not insofar as vulnerability is understood under the guidelines. He also suggests that these victims cannot be found to be vulnerable because they were responsible for their own financial predicaments and because they sought out Clay on their own initiative. These suggestions hardly deserve comment, given that they imply that everyone in financial difficulty assumes the risk of whatever follows. We note that the guidelines give broad discretion to identify different kinds of vulnerability, and financial hardship can certainly create the kind of vulnerability contemplated by § 3A1.1. See United States v. Akindele, 84 F.3d 948, 953-54 (7th Cir.1996); see also United States v. Page, 69 F.3d 482, 489 (11th Cir.1995); United States v. Borst, 62 F.3d 43, 47 (2d Cir.1995). The district court did not err in its findings in this respect.
 
 
 8
 Reese offers one challenge to her sentence, contending that the district court erred in calculating the losses suffered by the victims of her crime when it applied the guidelines. Before we address the merits of this argument, however, we must first consider whether we have jurisdiction to hear it. According to the Federal Rules of Criminal Procedure, a defendant's notice of appeal must be filed within ten days of the entry of judgment. Fed.R.App.P. 4(b). The judgment against Reese was entered on January 3, 1996, but her notice of appeal was not filed until January 26. Reese argues that her appeal was not untimely because she filed a motion for the correction of her sentence under Federal Rule of Criminal Procedure 35(c). This rule provides that a district court may correct a sentence that was imposed as a result of arithmetical, technical or other clear error as long as it makes the correction within seven days of the entry of judgment. When a party files a motion under this rule, the period for filing a notice of appeal does not begin until the close of the seven-day period for acting on the motion. United States v. Turner, 998 F.2d 534, 536 (7th Cir.), cert. denied, 510 U.S. 1026 (1993). If Reese properly filed a Rule 35(c) motion, her period for filing her appeal would not have started until January 12, seven working days after the entry of judgment against her; and her appeal would have been timely because January 26 was the tenth working day after January 12.
 
 
 9
 Reese did not, however, file a proper motion under Rule 35(c). Styled as a "Motion for Reconsideration of Sentence," it asked the district court to eliminate her commitment to work release and to lengthen her period of home confinement instead. This is a request for the district court to revisit its discretionary decision-making; but Rule 35(c) does not permit a district court to reconsider the exercise of its discretion. The district court has no authority to engage in such a reconsideration once the judgment has been entered. United States v. Dumont, 936 F.2d 292, 294 (7th Cir.), cert. denied, 502 U.S. 950 (1991). A purported motion asking action that is clearly outside the scope of the rule does not delay the beginning of the period for filing a notice of appeal. Id. Because the period for filing her appeal began on January 3, Reese's notice of appeal was untimely, and we do not have jurisdiction to hear her arguments. Hope v. United States, 43 F.3d 1140, 1142 (7th Cir.1994), cert. denied, 115 S.Ct. 2558 (1995).
 
 
 10
 For the foregoing reasons, the judgment of the district court with respect to Clay is AFFIRMED; and Reese's appeal is DISMISSED for want of jurisdiction.