UNITED STATES of America,
Appellee,

v.

Daniel M. FIRMENT, Defendant–
Appellant.

Docket No. 01–1243.

United States Court of Appeals,
Second Circuit.

Argued: May 8, 2002.

Decided: July 18, 2002.

Karen L. Peck, Assistant United States,
Attorney, New Haven, Connecticut (John

A. Danaher III, United States Attorney for the District of Connecticut, New Haven, Connecticut, on the brief), for Appellee.

David W. Windley, Brooklyn, New York, submitted a brief for Defendant–Appellant.

Before VAN GRAAFEILAND, KEARSE, and B.D. PARKER, Circuit Judges.

KEARSE, Circuit Judge.

Defendant Daniel M. Firment appeals from a judgment of the United States District Court for the District of Connecticut convicting him, following his plea of guilty before Janet C. Hall, *Judge,* of conspiracy to impede and impair the lawful functions of the Internal Revenue Service ("IRS"), in violation of 18 U.S.C. § 371. Firment was sentenced principally to 21 months' imprisonment, to be followed by a three-year term of supervised release, and was ordered to pay $46,465 in restitution to a victims' restitution fund. On appeal, he contends principally that the court erred in its determination of the amount of loss attributable to him under § 2T4.1 of the Sentencing Guidelines (2000) ("Guidelines"), in adjusting his offense level upward pursuant to Guidelines § 3B1.1(c) and § 3A1.1 for his role in the offense and the vulnerability of his victims, respectively, and in ordering restitution. Finding no merit in his contentions, we affirm.

## I. BACKGROUND

The present appeal arises out of the prosecution of Firment and others in connection with their operation of fraudulent telemarketing schemes headed by Louis J. D'Amato. In one such scheme, Firment and other members of the conspiracy telephoned persons who had been victimized by other telemarketing scams and persuaded them to send the coconspirators money to help fund lawsuits or investigations to recover the money the victims had lost in the earlier scams. Many of these victims were elderly persons with fixed incomes. The lawsuits and investigations were fictitious. In another telemarketing scam, the coconspirators offered, for a fee, to help people who had found it difficult to obtain credit cards to obtain such cards. In fact, no such help was provided.

Together, the coconspirators took in approximately $700,000, and they agreed not to report or pay taxes on the sums they received. During the years 1994–1997, Firment received at least $46,465 in payments from the various operations. Firment did not report any part of this amount on his personal income tax returns for those years.

In connection with this conduct, Firment, D'Amato, and others were indicted in 1999 on charges of, *inter alia,* conspiracy to commit mail fraud. Thereafter, to the extent relevant here, a two-count superseding indictment charged Firment with conspiracy to commit mail fraud (count one) and conspiracy to impede and impair the lawful functions of the IRS (count two) (the "tax conspiracy count"). Pursuant to a written plea agreement dated September 27, 2000 ("Plea Agreement"), Firment agreed to plead guilty to the tax conspiracy count, and the government agreed that if Firment's plea were accepted, the government would move for dismissal of the mail fraud conspiracy count. In the agreement, the parties stipulated that Firment had failed to report and/or to identify correctly the source of a total of $46,465 he had received from D'Amato-controlled entities. (Plea Agreement at 3–4.) They also "agree[d] that the Court may impose restitution in this case in an amount up to $46,465.00" and "that the order of restitution should state that amounts paid in this criminal case will go

to the victims of the telemarketing operations in which the defendant participated." (*Id.* at 2.)

In sentencing Firment, the district court began with $46,465 as the amount he himself had received as a result of his illegal conduct and on which he had not paid taxes. Assuming a 28% bracket, the court calculated that the government's lost tax revenue on that amount was $13,010.20. The court also calculated that D'Amato had received some $18,807.31 as a result of Firment's participation in the conspiracy; because D'Amato did not pay tax on that amount, the court calculated, again using the 28% bracket, that the government had lost an additional $5,266.05 in taxes as a result of Firment's conduct. The total loss in taxes was thus $18,276.25. Under the version of the Guidelines applicable to Firment, that loss total gave him a base offense level of 11. *See* Guidelines § 2T4.1 (2000).

The court found that Firment's base offense level should be enhanced by two steps pursuant to § 2T1.1(b)(1) because Firment had failed to report more than $10,000 a year from his criminal activity. In addition, it adjusted Firment's offense level upward by two steps pursuant to § 3A1.1(b)(1) because he knew or should have known of the vulnerability of his telemarketing victims; upward by two steps pursuant to § 3B1.1(c) because he played a managerial or supervisory role in the offense; and downward by three steps pursuant to § 3E1.1 because of his acceptance of responsibility.

As a result, Firment's total offense level was 14; as his criminal history category was I, the recommended Guidelines imprisonment range was 15 to 21 months. The court sentenced Firment principally to serve 21 months in prison, to be followed by a three-year period of supervised release, and ordered him to pay $46,465 in

restitution to a victims' restitution fund. This appeal followed.

## II. DISCUSSION

On appeal, Firment makes several challenges to his sentence. Most are squarely foreclosed by statutory or Guidelines provisions or by this Court's established precedents. We write to address his contention that the court erred in adjusting his offense level upward by two steps because of the vulnerability of his victims.

### A. *The Vulnerable Victim Enhancement*

Firment contends that the district court erred in adjusting his offense level upward under Guidelines § 3A1.1(b)(1) because of the vulnerability of the victims of the telemarketing scheme. At his sentencing hearing, Firment conceded to the district court that "the conduct concerning the telemarketing scheme was relevant conduct" within the meaning of Guidelines § 1B1.3 and that the victims of that scheme were vulnerable. However, he contends that the vulnerable victim adjustment is applicable only if the vulnerable persons were victims of the offense of conviction; and he argues that because he pleaded guilty only to the tax conspiracy count, the only victim of his offense of conviction was the United States, which cannot be said to be vulnerable. We reject Firment's contention that, for the vulnerable victim adjustment to be applicable, the vulnerable victim must be a victim of the offense of conviction.

The Guidelines provide that "[i]f the defendant knew or should have known that a victim of the offense was a vulnerable victim, [the sentencing court shall] increase [the offense level] by 2 levels." Guidelines § 3A1.1(b)(1). Since November 1, 1997, the commentary to this section has stated that "[f]or purposes of subsection (b), 'vulnerable victim' means a person ...

who is a victim of the offense of conviction *and any conduct for which the defendant is accountable under § 1B1.3 . . . .*" Guidelines § 3A1.1, Application Note 2 (emphasis added). Although this version of the commentary did not take effect until after the present telemarketing activities had ended, it became effective during the course of the tax-fraud conspiracy as the coconspirators failed to report their 1997 income to the IRS in 1998, and hence there was no *ex post facto* impediment to its application here, *see generally United States v. Minicone*, 960 F.2d 1099, 1111 (2d Cir.) (when a conspiracy continues after a Guidelines change that would be applicable to prior conspiratorial conduct, "fair warning of the penalty exist[s] notwithstanding that the penalty itself is mechanically a function of a crime committed prior to passage of the sentencing law"), *cert. denied*, 503 U.S. 950, 112 S.Ct. 1511, 117 L.Ed.2d 648 (1992).

■ Further, even prior to the 1997 amendment to the § 3A1.1(b)(1) commentary, this Court had held that application of the vulnerable victim adjustment was authorized where the offense conduct victimized a vulnerable person even though the entity directly targeted by the offense of conviction was a different person. *See, e.g., United States v. Borst*, 62 F.3d 43 (2d Cir.1995); *United States v. Echevarria*, 33 F.3d 175, 180–81 (2d Cir.1994). In *Borst*, a defendant who sold mobile homes was convicted of bank fraud, to wit, making false statements to a bank in furtherance of loan applications submitted on behalf of his apparently innocent customers, who were vulnerable because their credit ratings were poor and they needed help to secure financing for their purchases. The bank was the target of Borst's fraud; but a byproduct of that fraud, when it was discovered, was the further impairment of the purchasers' credit. We held that the

district court was "required to consider 'all harm that resulted from the [defendant's] acts and omissions,'" 62 F.3d at 47–48 (quoting Guidelines § 1B1.3(a)(3) (relevant conduct)), and that the district court thus had correctly applied the vulnerable victim enhancement to Borst even though injury to the loan recipients was not an element of the offense of bank fraud, *see* 62 F.3d at 48. In *Echevarria*, the defendant posed as a physician and submitted fraudulent "medical evidence" to support his "patients'" claims for social security disability and insurance benefits. We held that the "enhancement for vulnerable victims [wa]s appropriate where the exploitation of patients [wa]s part of" the social security disability scheme, 33 F.3d at 181 (internal quotation marks omitted), "even if the government felt the primary economic impact of the defendant's activities," *United States v. Borst*, 62 F.3d at 47 (describing *Echevarria*).

■ Accordingly, we see no error in the district court's application of the vulnerable victim enhancement to Firment on the basis of the vulnerability of the victims of the telemarketing scheme that generated the taxable revenues, despite the fact that his offense of conviction was a tax offense.

## B. *Other Challenges*

Firment also contends that the district court erred in (a) calculating the amount of loss that determined his base offense level, (b) adjusting his offense level upward on the ground that he had a managerial role in the conspiracy, and (c) ordering restitution to anyone other than the United States. These contentions are meritless and do not warrant extended discussion.

■ Firment contends that the district court miscalculated the amount of tax loss attributable to him pursuant to Guidelines § 2T4.1, by including the amount of taxes D'Amato had failed to pay on income the

latter received on account of Firment's efforts. We disagree. "[I]n the case of a jointly undertaken criminal activity . . . all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense", shall be taken into account in determining the base offense level. Guidelines § 1B1.3(a). When a defendant has pleaded guilty to conspiring with others to evade taxes, conspiracy-related tax loss is attributable to him unless he proves that the loss was not foreseeable by him. *See United States v. Martinez-Rios,* 143 F.3d 662, 677 (2d Cir.1998).

■ Firment's effort to distinguish *Martinez-Rios* on the ground that the conspiracy in that case was more sophisticated than that at issue here is unpersuasive. The touchstone of responsibility for the conduct of a coconspirator is foreseeability. Firment has not argued that D'Amato's failure to report and pay taxes on the income to D'Amato generated by Firment's participation in the conspiracy was unforeseeable to Firment, and we see no error in the district court's calculation of the tax loss caused by Firment's conduct.

Nor are we persuaded by Firment's contention that the district court erred in adjusting his offense level upward by two steps pursuant to Guidelines § 3B1.1(c) on the ground that he played a managerial or supervisory role in the offense. The court's findings as to a defendant's role may not be overturned unless they are clearly erroneous, *see, e.g., United States v. Brinkworth,* 68 F.3d 633, 641 (2d Cir. 1995); and we are to "give due deference to the district court's application of the guidelines to the facts," 18 U.S.C. § 3742(e). We see no error here. The court found that "Firment . . . worked with Mr. D'Amato to develop the next telemarketing scheme," and there was undisputed evidence that Firment had recruited another worker for the telemarketing scheme and received commissions on that recruit's earnings. The upward adjustment for the role played by Firment was not erroneous.

■ Finally, we reject Firment's contention that because the victims of the telemarketing scheme were not victims of the offense of conviction, *i.e.,* conspiracy to commit tax fraud, the district court exceeded its authority by ordering him to make restitution to those persons. Such an order of restitution is expressly authorized by statute when the defendant's plea bargain includes an agreement for such restitution. *See* 18 U.S.C. § 3663(a)(1)(A) ("The court, when sentencing a defendant convicted of an offense under this title . . . may order, in addition to . . . any other penalty authorized by law, that the defendant make restitution to any victim of such offense. . . . *The court may also order, if agreed to by the parties in a plea agreement, restitution to persons other than the victim of the offense.*" (emphasis added)).

Here, Firment's Plea Agreement stated that the court could order restitution in an amount up to $46,465, and that "[t]he parties also agree[d] that the order of restitution should state that amounts paid in this criminal case will go to the victims of the telemarketing operations in which the defendant participated." (Plea Agreement at 2.) The court did not err in ordering restitution to the victims of the telemarketing scheme.

## CONCLUSION

We have considered all of Firment's arguments on appeal and have found them to

be without merit. The judgment of conviction is affirmed.